UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| LEGACY HOUSING CORPORATION,<br>*Plaintiff*<br><br>v.<br><br>CITY OF HORSESHOE BAY, TEXAS, HORSESHOE BAY PROPERTY OWNERS ASSOCIATION, JAFFE INTERESTS, LP, F/K/A HORSESHOE BAY RESORT LTD. F/K/A HORSESHOE BAY RESORT INC.; AND HORSESHOE BAY RESORT DEVELOPMENT, LLC,<br>*Defendants* | § § § § § § § § § § § § § § § § § § No. 1:21-CV-01156-RP |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Legacy Housing's ("Legacy") Motion to Dismiss Defendant City of Horseshoe Bay's ("the City") Counterclaims, Dkt. 14; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation recommending that the District Court deny Legacy's motion.

1

## I. BACKGROUND

### A. Legacy's Amended Complaint

This suit arises from a dispute among Legacy, a producer of manufactured housing, Horseshoe Bay Property Owners Association (the "POA"), Jaffe Interests, Horseshoe Bay Resort Development ("Horseshoe Bay Development"), and the City of Horseshoe Bay concerning Legacy's development of 297 lots (the "development lots") in the city of Horseshoe Bay, purchased in 2019. Dkt. 43, at 1. Legacy's complaint states that the development lots are now encumbered by a zoning ordinance enacted in 2021 that imposed new registration requirements for contractors, limited the number of permits for speculative builds, and changed the requirements for driveways for manufactured homes. *Id.* at 5-8. Legacy argues that these new regulations interfere with its investment-backed expectations for the development lots and constitute a regulatory taking. *Id.* at 6. Legacy also claims that it was misled by the City about its chances of securing various zoning variances. *Id.* at 10. Further, Legacy states that the City has impermissibly delegated its interest in exercising its permitting and development powers by instructing Legacy to "first seek approval from Jaffe Interests" before going to the City for construction permits. *Id.* at 12.

Legacy's suit also concerns a 94.77-acre plot of land (the "ETJ property") located outside of the City (but within its extraterritorial jurisdiction) that "borders a strip of land [the 'Greenbelt'] located in the City that is owned by the POA." *Id.* at 11. The Greenbelt is bordered by the ETJ property to the south and the development lots to the north. Dkt. 11, at 15. Legacy claims that the POA accepted money from the

City in exchange for refusing Legacy access to the Greenbelt and agreeing to bring charges against anyone who crosses the Greenbelt. Dkt 43, at 11. Legacy also contends that the City "has notified Legacy of its plans to deny any permit applications to construct a driveaway on Legacy's residential lots separated by the POA's [Greenbelt]." *Id.* at 11-12. Legacy states that the POA diverts a percentage of its capital funds to private entities including Jaffe Interests, and that the City, POA, and Jaffe Interests are conspiring with respect to the POA's capital budget and the City's contributions. *Id.* at 12.

Legacy brings several causes of action against the City, the POA, and Jaffe Interests and its various resort entities operating in Horseshoe Bay. *Id.* at 14-24. As to the City, Legacy brings a claim for an unconstitutional regulatory taking, and seeks declaratory judgment as to the constitutionality of the City's Ordinance 2021-21. *Id.* at 14. Legacy also brings claims for: breach of fiduciary duty against the POA; a claim for negligence against the POA, Jaffe Interests, and Horseshoe Bay Development; a claim under 42 U.S.C. § 1983 for a deprivation of property rights and a civil conspiracy claim against the City, Jaffe Interests, Horseshoe Bay Development, and the POA. *Id.* at 17-22. Legacy also requests that the Court allow it to inspect POA records and declare that Legacy owns part of the Greenbelt at issue in this case. *Id.* at 22-23.

      B.    **The City's Answer and Counterclaim**

The City argues that when Legacy purchased the development lots, the relevant zoning ordinances did not allow for the construction of modular homes (as

distinct from manufactured homes) and that it wasn't until the adoption of Ordinance 2021-21 that modular homes were authorized in the district at issue. Dkt. 11, at 2. The City further argues that each of the requirements under Ordinance 2021-21 serve a rational government purpose, are equally applied throughout the city, and that Legacy has not stated a "colorable claim for a regulatory taking." *Id.* The City denies that Legacy is entitled to declaratory judgment as to Ordinance 2021-21 and denies that a regulatory taking has occurred. *Id.* at 6.[1]

The City asserts permissive counterclaims against Legacy, invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367. *Id.* at 9. The City's counterclaims concern "Legacy's threatened and ongoing violations of the City's zoning ordinances and a recorded development agreement governing the development of property owned by Legacy within the City's extraterritorial jurisdiction." *Id.* at 10. The City's counterclaim describes the ETJ property as "immediately south of the City's southern city limit and the [development] lots owned by Legacy … but is separated from [Legacy]'s lots inside the city limits by the [Greenbelt]." *Id.* at 11. This property is the same as the ETJ property referenced in Legacy's complaint. Dkts. 43, at 11; 11, at 15.

---

[1] As for Legacy's civil conspiracy claim against the City, Legacy's original complaint does not identify the City as a defendant to that claim. Dkt. 1, at 16. Accordingly, the City's answer states that the civil conspiracy cause of action was not asserted against the City, and, therefore, it does not respond to that claim. Dkt. 11, at 6. The City was added as a defendant to the civil conspiracy claim in Legacy's first amended complaint and continues to be named as a party to the alleged civil conspiracy in Legacy's second amended complaint. Dkts. 19, at 18; 43, at 20. However, the City has not amended its answer to respond to the civil conspiracy claim.

4

The City argues that the ETJ property, which was acquired by Legacy from 71 Landholdings out of a larger 403.57-acre parcel, is subject to a 2016 Development Agreement between the City and 71 Landholdings. Dkt. 11, at 11-12. The City argues that the 2016 Development Agreement is binding upon 71 Landholdings's "successors and assigns and runs with the entire 403.57 acres," including the 94.77-acre ETJ property. *Id.* at 12. The 2016 Development Agreement provides:

> The Owner covenants and agrees not to use the Property for any use other than for agriculture, wildlife management, and/or timber land consistent with Chapter 23 of the Texas Tax Code which will include for purposes of this Agreement, existing single-family residential use of the Property, without the prior written consent of the City. The Owner shall be permitted to construct a single-family residence, storage buildings and other related outbuildings such as barns, livestock pens, shelters and containments, all as may be used in conjunction with agricultural, wildlife management and/or timber land, but Owner will deliver prior written notice to the City of such construction activities to determine if a permit is required. Owner covenants and agrees to the stated use of the Property described above, which shall not include any subdivision and/or commercial development.

*Id.*

The City alleges that Legacy has recently violated this covenant by constructing a "wide, blacktop, road running the length of the ETJ Property." *Id.* The road runs from Highway 71 at the southernmost end of the ETJ property to the northernmost boundary, where the ETJ meets the Greenbelt. *Id.* at 12, 15. Just beyond the Greenbelt, the road meets Legacy's development lots in the City and connects to 26th Street, a municipal road. *Id.* The City argues that Legacy's road is inconsistent with single-family or agricultural use and "was instead designed to connect Legacy's development in the City with Highway 71 to facilitate its commercial manufactured housing development." *Id.* at 13.

Prior to Legacy's construction of the road, Horseshoe Bay's City Manager and City Attorney notified Legacy that its plan to connect Highway 71 through the ETJ property to Legacy's lots in the City was not allowed under the 2016 Development Agreement governing use of the ETJ property. *Id.* After Legacy began construction on the road, the City issued stop work orders and the POA placed barriers and "no trespassing" signs to prevent Legacy from connecting the road through the Greenbelt to Legacy's development lots and 26th Street on the other side. *Id.* at 14. Legacy apparently ignored these orders and signs and continued working on the road, eventually working under cover of night to connect the road over the Greenbelt. *Id.*

The City alleges that in publicizing its planned development on the lots located in the City limits, Legacy has advertised exclusive use of the road to access Highway 71 and stated its intention to build an amenity package on the ETJ property that would be accessible to future residents of the planned development. *Id.* at 15-16. According to the City, Legacy has essentially announced that it will "continue to develop the ETJ Property in a manner that plainly violates the existing development restrictions applicable to its property" by advertising to future tenants of the City lots that it may one day build a pool, playgrounds, and a community center on the ETJ property. *Id.* at 16.

The City brings permissive counterclaims for breach of the 2016 Development Agreement, and breach of a restrictive covenant. *Id.* at 17-18. The City also seeks a declaration that: Legacy and the road across the ETJ property are subject to the 2016 Development Agreement; Legacy's plans to build a swimming pool, community center,

and playground are subject to and prohibited by the Development Agreement; and Legacy's conduct satisfies the condition necessary to authorize the City to annex and rezone the ETJ property. *Id.* at 18-19.

### C.   Legacy's Motion to Dismiss the City's Counterclaims

Legacy moves to dismiss the City's permissive counterclaims on the basis that this Court lacks subject matter jurisdiction over the claims because there is no independent jurisdictional basis for federal jurisdiction. Dkt. 14, at 1. Legacy argues that the City's counterclaims for breach of contract, breach of restrictive covenant, and declaratory judgment arise out of an agreement with 71 Landholdings, a non-party, and concern a separate piece of property than is at the center of Legacy's complaint. *Id.* at 2. Legacy states that the City's counterclaims are permissive because they do not arise out of the same transaction and occurrence made the basis of Legacy's takings claim under federal law related to the development lots within City limits. *Id.* Legacy further argues that the counterclaims asserted by the City require an independent jurisdictional basis lacking in this instance, where the counterclaims derive from Texas common law, and the parties are not diverse. *Id.* at 4. Legacy asks the Court to dismiss the City's counterclaims for want of subject matter jurisdiction. *Id.*

The City responds that it is not required to establish an independent basis for federal question or diversity jurisdiction in order to assert its permissive counterclaims. Dkt. 17, at 2. Instead, the City only needs to demonstrate that its counterclaims derive from a common nucleus of operative fact such that its claims

7

form part of the same case or controversy as Legacy's claims. *Id*. The City argues that Legacy's conduct as to the ETJ property and 2016 Development Agreement are "part of the same development activities" involving the development lots at the center of Legacy's complaint. *Id*. The City argues that "Legacy is also developing its adjacent 94.77-acre ETJ property to serve it's manufactured homes in the City limits." *Id*. The City's counterclaims, thus, derive from a common nucleus of "Legacy's efforts to develop its modular homes and amenities to serve them, in derogation of the applicable regulations and development restrictions." *Id*. at 3.

The City further responds that Legacy's claim that the City's counterclaims pertain to an "unrelated tract of land" is disproven by the fact that Legacy sought to amend (and eventually did amend) its complaint to allege that the City, Jaffe Interests, Horseshoe Bay Development, and the POA conspired to "keep [Legacy] from connecting the ETJ property through the POA's Greenbelt to the City's streets—the very same activity that forms the basis of the City's counterclaim." Dkts. 17, at 3; 43 at 17-22. The City argues that its counterclaim readily satisfies the "same case or controversy" standard for this Court's exercise of supplemental jurisdiction under 28. U.S.C. § 1367. Dkt. 17, at 3.

Legacy replies that its claims, and the City's counterclaims do not arise from a common nucleus of operative fact because "the City ordinances made the basis of Legacy's claims in this case as to the [development lots] do not govern the [ETJ property] and the Development Agreement the City entered with [71 Landholdings] made the basis of the City's counterclaim does not govern the [development lots]."

8

Dkt. 18, at 3. Legacy argues that a common nucleus of operative fact does not exist where different incidents, contracts, and injuries are at issue. *Id.* Legacy states that the City's falsely equivocates the facts at issue in Legacy's civil conspiracy claim concerning the Greenbelt and the City's counterclaims. *Id.* Legacy also argues that its conspiracy claim relates to the POA's refusal to let Legacy use the Greenbelt "despite it's membership in the POA" whereas the City's counterclaims concern whether "Legacy is bound by or in breach of [a] third party contract." *Id.* at 2-3.

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts

evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### III.   DISCUSSION

Under Federal Rule of Civil Procedure 13, a counterclaim is compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P 13(a)(1). All other counterclaims are permissive. Fed. R. Civ. P. 13(b). In this case, the parties agree that the City's counterclaims are permissive. *See* Dkts. 17, at 2; 18, at 2.

The District Court does not have original federal subject matter jurisdiction over the City's counterclaims because Legacy and the City are not diverse, and the City's breach of contract and breach of restrictive covenant claims are questions of Texas common law. Dkts. 14, at 6; 11, at 16-18; *see also* 28 U.S.C. § 1332.[2] The District Court does, however, have original jurisdiction over Legacy's claims arising from alleged deprivations of property rights and an unconstitutional regulatory taking under 28 U.S.C. § 1331 governing federal question jurisdiction and over Legacy's declaratory judgment action under 28 U.S.C. § 2201. *See* 28 U.S.C. § 133; 28 U.S.C. § 2201.

Where a court has original jurisdiction, 28 U.S.C. § 1367 confers "supplemental jurisdiction" over claims, including counterclaims, that "are so related to claims in

---

[2] The City's third counterclaim is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). While this statute does not confer an independent basis for federal question jurisdiction, "it permits the award of declaratory relief … when other bases for jurisdiction are present." *Jones v. Alexander*, 609 F. 2d 778, 781 (5th Cir. 1980).

the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Whether claims form part of the "same case or controversy" is decided by determining whether the claims derive from a "common nucleus of operative fact." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966). Additionally, "district courts may decline to exercise supplemental jurisdiction" when "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

Here, the City's counterclaims concern Legacy's construction of a road that runs the length of Legacy's ETJ property connecting Highway 71 across the Greenbelt to Legacy's development lots and a municipal street within the City limits. Dkt. 11, at 12,15. The City claims that the road is being advertised as a way for future residents of Legacy's development lots to access Highway 71. *Id.* at 15-16. Legacy has also apparently advertised its plans to further develop the ETJ property to include amenities for residents of Legacy's development lots. *Id.* The City argues that the road and planned future ETJ property development constitute a breach of the 2016 Development Agreement governing use of the ETJ property. *Id.* at 13.

Legacy's complaint also references the ETJ property and the road at issue in the City's counterclaims. Dkt. 43, at 11. Legacy describes the ETJ property as bordering the Greenbelt and claims that the POA and the City conspired to deny access to the Greenbelt. *Id.* at 11-12. Presumably, Legacy needs access to the Greenbelt in order to connect its ETJ road to its development lots just on the other side of the Greenbelt. Thus, Legacy's and the City's claims both implicate the ETJ

11

property, Legacy's lots within the City, the Greenbelt property owned by the POA, and actions taken by the POA, the City, and Legacy in regards to Legacy's road that spans each of their properties. The undersigned finds that Legacy's claims and the City's counterclaims share a common nucleus of operative fact, particularly, Legacy's conduct in constructing a road connecting the ETJ property, over the Greenbelt, to its development lots within the City limits. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,* 140 S. Ct. 1589, 1590 (2020) (no common nucleus where two suits involved different trademarks and different conduct occurring 6 years apart).

In determining whether the parties' claims share a "common nucleus of operative fact," the undersigned must look to whether a claimant would ordinarily be expected to try all the claims under consideration in a single proceeding. *See Gibbs,* 383 U.S. at 725. And while the legal issues and exact factual circumstances here differ, the same parties, evidence, witnesses, and subject properties are at issue, and it would be judicially efficient to try the claims together. *See NatureSweet, Ltd. v. Mastronardi Produce, Ltd.,* No. 3:12-CV-1424-G, 2013 WL 460068, at *4-7 (N.D. Tex. Feb. 6, 2013) (finding common nucleus of operative fact between Defendant's declaratory judgment, non-infringement, and invalidity of patent claims and Plaintiff's infringement claims, because it was "judicially efficient" to try all the claims together, even though legal and factual issues differed); *Cordero v. Voltaire, LLC,* No. A-13-CA-253-LY, 2013 WL 6415667, at *5-6 (W.D. Tex. Dec. 6, 2013) (no common nucleus between counterclaims for theft conversion, breach of fiduciary duty,

and FLSA claims where the only nexus was employment relationship between the parties and different bodies of evidence were required to prove each of the parties' claims).

Further, as the City points out, if it were required to bring its counterclaims in a separate suit, it would be in the "anomalous position of litigating the question of whether the Defendants conspired to keep Legacy from building it's roadway onto the City streets separately from the question of whether the [2016] Development Agreement barred Legacy from building its commercial roadway in the first instance." Dkt. 17, at 9. The undersigned acknowledges that while Legacy's claims deal with the more precise question of its ability to access the Greenbelt and build a road over it, one can imagine that in proceedings concerning this question, Legacy's right to build the road and its future plans for the ETJ property might arise. If not for its plans for the ETJ property, it is not clear what Legacy's motivations are in accessing the Greenbelt, nor what the City's interest would be in allegedly conspiring with the POA and others, to prevent its construction.

Based on the foregoing analysis, the undersigned finds that Legacy's claims and the City's Counterclaims are sufficiently connected to form one "case or controversy" in satisfaction of 28 U.S.C. § 1367(a). Therefore, the District Court has supplemental jurisdiction over the City's counterclaims for breach of contract, breach of restrictive covenant, and for declaratory judgment.

None of the factors weighing against an exercise of supplemental jurisdiction are present in this case. 28 U.S.C. § 1367(c).[3] The undersigned recommends that the District Court deny Legacy's motion to dismiss the City's counterclaims on jurisdictional grounds.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Legacy's Motion to Dismiss, Dkt. 14.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[3] 28 U.S.C. § 1367(c) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED January 31, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE