## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **LEGACY HOUSING CORPORATION,** *Plaintiff* | § § § § | |
| **v.** | § § | **No. 1:21-CV-01156-RP** |
| **CITY OF HORSESHOE BAY, TEXAS, HORSESHOE BAY PROPERTY OWNERS ASSOCIATION, JAFFE INTERESTS, LP, F/K/A HORSESHOE BAY RESORT LTD. F/K/A HORSESHOE BAY RESORT INC.; AND HORSESHOE BAY RESORT DEVELOPMENT, LLC,** *Defendants* | § § § § § § § § § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is the City of Horseshoe Bay's Partial Motion to Dismiss, Dkt. 48; and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Court grant the City's motion.

### I.      BACKGROUND

This suit arises from a dispute among Legacy, a producer of manufactured housing, Horseshoe Bay Property Owners Association (the "POA"), Jaffe Interests, Horseshoe Bay Resort Development ("Horseshoe Bay Development"), and the City of

1

Horseshoe Bay concerning Legacy's development of 297 lots (the "development lots") in the city of Horseshoe Bay, purchased in 2019. Dkt. 43, at 1. Legacy's complaint states that the development lots are now encumbered by zoning Ordinance 2021-12 which imposed new registration requirements for contractors, limited the number of permits for speculative builds, and changed the requirements for driveways for manufactured homes. *Id*. at 5-8. Legacy argues that these new regulations interfere with its investment-backed expectations for the development lots and constitute a regulatory taking. *Id*. at 8. Legacy also claims that it was misled by the City about its chances of securing various zoning variances. *Id*. at 10. Further, Legacy states that the City has impermissibly delegated its interest in exercising its permitting and development powers by instructing Legacy to "first seek approval from Jaffe Interests" before going to the City for construction permits. *Id*. at 12.

Legacy's suit also concerns a 94.77-acre plot of land (the "ETJ property") located outside of the City (but within its extraterritorial jurisdiction) that "borders a strip of land [the 'Greenbelt'] located in the City that is owned by the POA." *Id*. at 11. The Greenbelt is bordered by Legacy's ETJ property to the south and Legacy's development lots to the north. Dkt. 11, at 15. Legacy claims that the POA accepted money from the City in exchange for denying Legacy access to the Greenbelt and agreeing to bring charges against anyone who crosses the Greenbelt. Dkt 43, at 11. Legacy also contends that the City "has notified Legacy of its plans to deny any permit applications to construct a driveway on Legacy's residential lots separated by the POA's [Greenbelt]." *Id*. at 11-12. Legacy states that the POA diverts a percentage of

its capital funds to private entities including Jaffe Interests and that the City, POA, and Jaffe Interests are conspiring with respect to the POA's capital budget and the City's contributions. *Id*. at 12.

Legacy brings several causes of action against the City, the POA, and Jaffe Interests and its various resort entities operating in Horseshoe Bay. *Id*. at 14-24. As to the City, Legacy brings a claim for an unconstitutional regulatory taking as well as claims under 42 U.S.C. § 1983 for deprivation of substantive due process, procedural due process, and the right to equal protection, along with a claim for conspiracy related to the City's alleged interference with Legacy's property interests and investment backed expectations. Dkt. 43, at 18-19. Legacy also brings a claim for civil conspiracy claim against the City arising from the same conduct. *Id*. at 20.

The City moves to dismiss all but Legacy's regulatory takings claim. Dkt. 48, at 11. The City moves to dismiss Legacy's civil conspiracy claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing the civil conspiracy claim is barred by the City's governmental immunity. Dkt. 48, at 13. The City also moves to dismiss Legacy's § 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Legacy does not state a viable claim for a deprivation of a constitutional right because it had no vested right to build a road across the POA property as it wanted and has not pleaded any facts that show the City denied permits to which it was entitled. *Id*. at 10-11.

## II.    LEGAL STANDARD

### A.    12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B.    12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may

not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

### A.   Civil Conspiracy Claim

Legacy claims that the City has conspired with "Jaffe Interests, Horseshoe Bay Development, and the POA" by instructing Legacy to "seek approval from Jaffe Interests … before the City will consider issuing a construction permit to Legacy." Dkt. 43, at 19. Legacy states that the City has also conspired "with the POA to deny access to the POA [Greenbelt] … all to stifle development of manufactured housing." *Id.* The City moves to dismiss Legacy's civil conspiracy claim, arguing that the claim is barred by governmental immunity under Texas law. Dkts. 48, at 13.

Under Texas law, "[s]overeign immunity generally defeats a court's subject matter jurisdiction over a suit against a state unless the state expressly consents to suit." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Id.*

The Texas Tort Claims Act ("TTCA") provides a limited waiver of sovereign and governmental immunity for certain tort claims, "allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). As such, the

TTCA's waiver of immunity constitutes the "only … avenue for common-law recovery against the government" on a tort theory. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). The TTCA, does not waive immunity for intentional torts such as civil conspiracy. *See Murray v. Earle*, 405 F.3d 278, 294  (5th Cir. 2005) (stating that the TTCA does not waive immunity for civil conspiracy); *TCI W. End, Inc. v. City of Dallas*, 274 S.W.3d 913, 921 (Tex. App.—Dallas 2008, no pet.) (civil conspiracy is an intentional tort barred by immunity under the TTCA). In the absence of such a waiver, the City is shielded by governmental immunity.

Legacy argues that "[a] municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions" under the TTCA. Dkt. 50, at 7 (citing *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2016)). While it is true governmental immunity applies only to governmental, and not proprietary functions, the City's actions that are the basis of Legacy's conspiracy claims are governmental, not proprietary. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986) ("Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations.").

Governmental functions generally consist of a municipality's activities "in the performance of purely governmental matters solely for the public benefit." *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006) (internal citations and quotations

omitted). Such functions are those that, as a historical matter, have been "normally performed by governmental units." *Wasson*, 559 S.W.3d at 147 (quoting Joe R. Greenhill and Thomas V. Murto III, Governmental Immunity, 49 Tex. L. Rev. 462, 463 (1971)). By contrast, proprietary functions are those "performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality" and "not as an arm of the government." *Gates*, 704 S.W.2d at 739. Because they "are not done as a branch of the state," proprietary acts "do not implicate the state's immunity for the simple reason that they are not performed under the authority, or for the benefit, of the sovereign." *Wasson*, 559 S.W.3d at 147 (internal quotations omitted).

The TTCA enumerates a non-exhaustive list of several governmental functions including: "zoning, planning, and plat approval" and "enforcement of land use restrictions." Tex. Civ. Prac. & Rem. Code §§ 101.0215(a)(29)-(36). Proprietary functions under the TTCA include "the operation and maintenance of a public utility" and "amusements owned and operated by the municipality." Tex. Civ. Prac. & Rem. Code §§ 101.0215(b)-(c).

The alleged conduct attributable to the City underlying Legacy's civil conspiracy claim (specifically denial of a permit to construct a driveway on Legacy's development lots located in the City, the City's instruction that Legacy seek approval from Jaffe Interests before the City considers issuing a construction permit, and the requirement that construction comply with POA architectural guidelines) fall within the "zoning, planning" and "enforcement of land use restrictions" categories in the

TTCA enumerated list of governmental activities. Dkt. 43, at 11-12. The undersigned finds that the City is shielded from a civil conspiracy claim arising from this conduct. Legacy's civil conspiracy claim against the City should be dismissed.

**B.     Section 1983 Claims**

Count Three of Legacy's Second Amended Complaint asserts that the City denied Legacy substantive and procedural due process and equal protection when it adopted Ordinance 2021-12, conspired with co-defendants, and deprived Legacy of its vested interest in the use and development of the Lots in conformity with the previous planning and zoning. Dkt. 43, at 18. Legacy also claims that the City is liable for conspiracy based on its conduct in delegating and deferring its powers regarding rights of way and permitting, instructing Legacy to seek approval from co-defendants before the City would consider construction permits, denying access to the POA's property, and denying Legacy rights to which it is entitled as a member of the POA. *Id.* at 19.  Legacy brings these claims pursuant to 42 U.S.C. § 1983. *Id.* at 17.

The City moves to dismiss Legacy's due process claims arguing: (1) Legacy cannot establish municipal liability under *Monell v Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978);  (2) Legacy fails to plead the existence of a protected property interest; (3) assuming for the sake of argument that Legacy did have a protected property interest, there is no claim for a procedural due process violation where Legacy "fails to identify any particular deprivation for which … procedural elements were lacking" and does not identify what specific notice or process it believes it would have been due, and there is no claim for violation of substantive due process

9

where the City's actions pass the rational basis test. *Id.* at 22-26. As to Legacy's equal protection claim, the City states that Legacy does not "plausibly suggest that it was treated differently from similarly situated parties without a conceivable basis" and that Legacy's claim is "affirmatively negated by plain language of the City's ordinance" which imposes the same requirements on general commercial and general residential contractors as it does on Legacy. *Id.* at 27. And the City argues that Legacy's § 1983 conspiracy claim fails to plead violation of constitutional right, among other pleading deficiencies. Dkt. 48, at 14-19.

1.    Municipal liability under *Monell* for § 1983 claims

To state a claim under § 1983, a plaintiff must assert facts to support that a person acting under color of state law denied the plaintiff a right under the Constitution or federal law. *Martin v Thomas*, 973 F.2d 449, 452-53 (5th Cir 1992).

To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." *Monell,* 436 U.S. at 691. The Plaintiff must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (cleaned up).

"*Monell* plaintiffs [must] establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)); *see also id.* (observing that "where

a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability"). Therefore, Legacy must identify the policy, connect the policy to the governmental entity itself, demonstrate deliberate indifference on the part of the policymaker in promulgating the policy, and show its injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

Because each of Legacy's claims against the City under § 1983 require Legacy to establish municipal liability, the undersigned will first examine whether Legacy alleges an official policy or custom, a policymaker, and has connected those elements to its injuries.

a.   Policy

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). The policy identified in Legacy's pleadings is the City's Ordinance 2021-12. Dkt. 43, at 5. Legacy states that the Ordinance imposed an "unnecessary and cumbersome registration scheme defining 'manufactured housing contractor' that must be registered with the City and subject to regulation by the City so broadly" and "changed the zoning and building requirements imposed on the Lots" such that Legacy is prohibited from developing the Lots and using its manufactured homes as was previously allowed. Dkt. 43, at 5-6. At the pleading stage, a plaintiff's burden to

11

allege an unconstitutional policy, practice or custom is not onerous. *Kelley v. City of Wake Vill.*, 264 F. App'x 437, 443 (5th Cir. 2008). The undersigned finds that Legacy has sufficiently pleaded a policy for the purposes of establishing municipal liability for claims related to the Ordinance.

b.   Policymaker

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Still, "a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016).  Legacy states that the "City adopted the Ordinance"; "impos[ed] unreasonable burdens" through the Ordinance; and required certain actions from Legacy pursuant to the Ordinance. *Id.* at 5-6. Again, liberally construing Legacy's pleadings, Legacy appears to plead that the City acted according to a specific official policy, the 2021-12 ordinance, which was promulgated by the City itself, a legally authorized policymaker. *See Groden*, 826 F.3d at 286 (finding that plaintiff sufficiently pleaded "policymaker" element where plaintiff alleged the city "publicly announced a new policy" because it allowed for the reasonable pleading inference that the policy was

attributable to an official policy made by the policymaker of the city, *i.e.*, the city council).[1]

### c. Moving force

Lastly, Legacy is required to plead that the City's allegedly unlawful policy was the "moving force" behind the alleged constitutional violations. *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 166-69 (5th Cir. 2010). "The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (internal citations and quotations omitted). There must be a "direct causal connection … between the policy and the alleged constitutional deprivation." *Id.* (quotation omitted). In this case, Legacy states numerous times throughout its pleadings that the City's Ordinance was the cause or moving force of its alleged constitutional injuries. *See* Dkt. 43, at 8 ("The City has significantly impacted Legacy's investment backed expectations for the Property by imposing ordinances and regulations."); *id*. at 43 ("As a result of the Ordinance and the City's actions (including the conspiracy with Jaffe Interests, Horseshoe Bay Development and the POA as described herein), Legacy has been deprived of its property rights.").

For the purposes of municipal liability under *Monell,* the undersigned finds that Legacy has identified a policy, policymaker, and alleged that the policy was the

---

[1] The City of Horseshoe Bay is a home-rule city. Home-rule cities may exercise all powers not denied to them by the Constitution or state law. *See* Tex. Const. art. XI, § 5; *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 592 (Tex. 2018). These inherent powers include, for example, the authority to adopt and enforce building codes and the authority to regulate land use. *Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016); *City of Brookside Village v. Comeau,* 633 S.W.2d 790, 793 (Tex. 1982).

moving force behind its constitutional injuries, insofar as Legacy alleges injuries based on the Ordinance. Legacy has not sufficiently pleaded a policy or policymaker that might cover other of the City's alleged actions giving rise to its § 1983 claims, such as a policy or custom related to: delegating and deferring authority to private interests such as the POA and Jaffe Interests; a policy or custom of imposing "burdensome and arbitrary" regulations, registration requirements, and standards for construction and installation; and a policy or custom of unreasonably denying variances and approvals necessary for permitting. Dkt. 43, at 10. Nowhere in Legacy's complaint does it state that the City had an official policy or custom of committing such acts.

### 2.   Due process violations

The Fourteenth Amendment to the Constitution of the United States guarantees, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The due process clause has procedural and substantive components. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Substantive due process protects plaintiffs from the arbitrary deprivation of protected interests while procedural due process guarantees "an opportunity to be heard" before the deprivation. *Mathews v Eldridge*, 424 U.S. 319, 332-33 (1976) (internal citations and quotations omitted); *Lewis*, 523 U.S. at 846-47.

Claims under procedural and substantive due process both require the plaintiff to identify a protected property interest. *See Meza v. Livingston*, 607 F.3d 392, 399

(5th Cir. 2010); *see also Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir.1992) (stating that a prerequisite to a substantive due process claim is the establishment of a constitutionally protected property right); *Jackson Ct. Condos., Inc. v. City of New Orleans,* 874 F.2d 1070, 1074 (5th Cir. 1989) (requiring a showing of a property right as a basis for a procedural due process claim).

a.    Existence of a property right

The threshold issue governing disposition of Legacy's § 1983 due process claims is whether Legacy has met its burden of demonstrating that it had a protected property right.

"Property interests … are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Hill v. City of Seven Points,* 31 F. App'x. 835, 16 (5th Cir. 2002). In Texas, a property interest exists where an entity "has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings." *Jabary v. City of Allen*, 547 F. App'x 600, 606 (5th Cir. 2013) (quoting *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.—Houston [14th Dist.] 2012)) (cleaned up).

In the zoning context, a plaintiff does not have a legitimate claim of entitlement to an applied-for benefit if government officials have discretion to grant or deny the benefit. *Da Vinci Inv., Ltd. P'ship v. City of Arlington*, 747 F. App'x 223, 226 (5th Cir. 2018) (per curiam) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

But if "mandatory language" specifically requires officials to reach a particular result upon finding an applicant meets the substantive requirements, the plaintiff possesses a legitimate claim of entitlement. *Id.* Thus, if, for example, "under the ordinances, city council members could grant or deny a development plan application in their discretion, there was no entitlement to the benefit and, therefore, no protected property right." *Id.* (internal quotations and citation omitted).

Legacy asserts a few rights or categories of property rights to which it is entitled: rights to permits and variances, access to the POA's Greenbelt property, and use of the development lots as originally planned for before enactment of Ordinance 2021-12.

### i. Permits and variances[2]

Legacy claims right related to permits and variances. Dkt. 43, at 7 (stating that the City requires "arbitrary" information such as a recommendation from a financial institution and references that can attest to Legacy's workmanship "prior to issuing a permit"); *id.* (stating that the City has imposed "an arbitrary cap on the number of construction permits it will issue to Legacy for speculative builds"); *id.* at 10 (stating the City has denied variances and necessary approvals for permitting); *id.* (stating "[t]he City has notified Legacy of its plans to deny any permit applications to construct driveways on Legacy's residential lots separated by the POA's [Greenbelt]"); *id.* at 11 (stating the City has instructed Legacy to get approvals from the POA and

[2] DMAC ignores this established case law entirely. DMAC acknowledges that the Ordinance empowered the City Engineer with discretion to issue permits—it just disagrees that he appropriately exercised that discretion. *See* Dkt. 106, at 12, 13 ¶ 41, 21 ¶ 74, 26 ¶ 85, 31 ¶ 101.

16

Jaffe Interests before it "will consider issuing a construction permit to Legacy"); *id.* at 9 (stating the City has "denied further approvals or variances"); *id.* at 10 (stating Legacy was misled about its chances of securing a zoning variance, only for the City to recommend the Board of Adjustments deny the variance request).

As stated above, in the zoning context, a property owner does not have a legitimate property interest in benefits for which it applied, such as permits and variances, if the City had discretion to grant or deny the permits and variances. Legacy does not allege that the City had no discretion as to whether to deny or grant the permits and variances for which it applied. To the contrary, in pleading that the City recommended to the Board of Adjustments that it deny Legacy's application for a variance after "misleading" Legacy that it might recommend approval, Legacy suggests that the Board of Adjustments had discretion as to whether to deny or grant variances with input from the City. The language of the Texas Local Government Code also supports a finding that permit applications are a discretionary function. *See* Tex. Loc. Gov't Code § 214.904(b)(1)-(2) (stating that a municipality must either grant or deny a building permit application no later than forty-five days following the application and  if a municipality declines to award the permit, it must "provide written notice to the applicant stating the reasons why [it is] unable to grant [ ] the permit"). Discretionary statutes "do no give rise to constitutionally protected property interests." *Horton v. City of Smithville*, 117 F. App'x 345, 348 (5th Cir. 2004)

The undersigned finds that Legacy has not pleaded facts sufficient to show that the City's denial of permits and variances was not discretionary, and therefore that

Legacy had vested property right in the permits and variances for which it alleges it applied for but never received.

        ii.      Access to the POA Greenbelt

Legacy also states that the City, conspired with the POA and Jaffe Interests to deny "rights to which [Legacy] is entitled as a member of the POA." Dkt. 43, at 19. This alleged deprivation is related to the POA's refusal to allow access to the POA's Greenbelt "located in the City that is owned by the POA." *Id.* at 11. The "access" Legacy wanted was the ability to construct a road or walkway across the POA's Greenbelt property connecting Legacy's properties to the north and south of the Greenbelt. Dkt. 48, at 2. Legacy cites no source of its alleged right to do so. While Legacy claims that the POA Articles of Incorporation states that members of the POA, like Legacy's residents, are entitled "to the use and enjoyment of the [POA] properties and Common Land," it does not plead that use and enjoyment extends to the kind of access it sought. Dkt. 43, at 11. Legacy has not adequately pleaded that access to the POA's property in order to build a road across it is a protected property right.

        iii.     Use of the development lots

Legacy claims that when it purchased the Lots "there was no existing ordinances or regulations that prohibited, impeded, or negatively impacted [its] ability to develop the Lots using all its models of manufactured homes" and that it had a "vested interest in the use of the Lots as [then] platted and zoned on which it relied." *Id.* at 18. Whether Legacy had a vested property right in its expectation of use of the Lots as platted and zoned when purchased is a closer question. This is

because Legacy's assertion of property right in development expectations for the purposes of its due process claims closely mirrors Legacy's pleadings as to its regulatory takings claim.[3]

A few principles guide the undersigned's analysis as to whether Legacy has a vested property right in its development expectations for the purposes of its due process claims. The first is that the Fifth Circuit has "long insisted that review of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts." *Shelton v City of College Station*, 780 F.2d 475, 477 (5th Cir. 1986). The second is that property rights are creatures of state-law rules or understandings, and under Texas law, a constitutionally protected right must be a "vested right," which is something "more than a mere expectancy based upon an anticipated continuance of an existing law." *Klumb v. Houston Mun. Emp. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). Further, Texas courts have made clear that property owners do not have a constitutionally protected vested right to use property in any way they choose without restriction. *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972), *abrogated on other grounds by Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d

---

[3] *See* Dkt. 43, at 6 (covering Legacy's takings claim: "the City adopted Ordinance 2021-12 (the 'Ordinance') which changed the zoning and building requirements imposed on the Lots to such a degree that it prohibits Legacy's development of the Lots using its manufactured home models as were previously allowed and imposing unreasonable and additional burdens that make the development of the property cost prohibitive. In this regard, the Ordinance has a devastating adverse economic impact which interferes with Legacy's investment-backed expectations for the Lots, that being a development for manufactured homes.")

424 (Tex. 2002); *City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The last principle is that the Supreme Court has held that due process should not "do the work" of the Takings Clause. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.,* 560 U.S. 702, 721-22 (2010). This is because "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (four-Justice plurality opinion) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)). However, a substantive due process claim is distinct from a Takings Clause claim when the plaintiff complains that the municipality was arbitrarily interfering with its property rights rather than seeking to acquire or regulate the use of the property. *Simi Inv. Co. v. Harris County, Tex.,* 236 F.3d 240, 248 n. 12 (5th Cir. 2000).

Because zoning reclassification may violate due process where "the action of the zoning commission is arbitrary and capricious," the undersigned will proceed to an analysis of whether Legacy has pleaded the elements of its due process claim on the basis of a vested property right in its development expectations affected by zoning reclassification. *S. Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir. 1974) (en banc). The next step is to determine whether Legacy has sufficiently pleaded either procedural or substantive due process violations with respect to the zoning reclassification and Legacy's expectations for use and development of the property.

b.      Procedural due process violation

The Due Process Clause's procedural component is "flexible," and its requirements depend on what "the particular situation demands." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (per curiam) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). But "[t]he 'essential requirements' are 'notice and an opportunity to respond' to the government's position." *SEC v. Hallam*, 42 F.4th 316, 321-22 (5th Cir. 2022) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). The Court considers (1) whether the plaintiff has a liberty or property interest entitled to procedural-due-process protections, and (2) if so, what due process requires. *Reynolds v. City of Poteet*, No. SA:12-CV-1112, 2013 WL 594731, at *15 (W.D. Tex. Feb. 15, 2013) (citing *Mathews,* 424 U.S. at 332-33).

In the zoning and permitting context, the Fifth Circuit considers procedural due process claims through one of two frameworks. "[W]here a zoning decision has been made by an elected body … [the Fifth Circuit] ha[s] characterized the action as legislative or 'quasi-legislative,'" thereby "negating procedural due process claims." *Jackson Ct. Condos.*, 874 F.2d at 1074. "A municipal body's action may be more likely termed adjudicative if an appointed group, such as a zoning board, makes a specific decision regarding a specific piece of property." *Cnty. Line Joint Venture v. City of Grand Prairie*, 839 F.2d 1142, 1144 (5th Cir. 1988). Procedural due process rights attach to this latter category. *See id.*; *but see Shelton*, 780 F.2d at 482 ("[A] state's use of an adjudication-like mechanism for zoning decisions does not by itself trigger [a procedural due process] inquiry or create [protected] property rights."). To the extent

21

the City's conduct with respect to enacting the Ordinance falls into the legislative or quasi-legislative category, Legacy's claims against the City on the basis of the Ordinance ends there.

Legacy has not alleged that the decision to enact the Ordinance which had the effect of changing the zoning requirements for its development lots was enacted by a zoning board or that enactment of the ordinance was a "specific decision regarding a specific piece of property." *Cnty. Line Joint Venture,* 839 F.2d at 1144. Further, Legacy does not dispute that in Horseshoe Bay, it is the City Council, an elective legislative body, that adopts zoning and building code ordinances. Dkt. 48, at 21. The undersigned finds that enactment of the Ordinance, which Legacy alleges effected its rights with respect to its development lots, was a legislative act negating Legacy's procedural due process claim on the basis of the Ordinance. Legacy's procedural due process claims with respect to zoning reclassification via the Ordinance should be dismissed.

### c. Substantive due process

As many Courts have observed, government action pertaining to land-use decisions comports with substantive due process if that action is rationally related to legitimate government interests. *See, e.g., FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 172 (5th Cir. 1996). Courts also emphasize, however, that "[land-use] ordinance[s] and all similar laws and regulations must find their justification in some aspect of the police power, asserted for the public welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 387 (1926); *see also Wheeler v. City of Pleasant Grove,*

664 F.2d 99, 100 (5th Cir. 1981). Review of municipal zoning by federal courts based on substantive due process principles is strictly circumscribed; the court has the authority to determine whether the decision is arbitrary or capricious, but nothing more. *Shelton*, 780 F.2d at 477. A zoning decision must be upheld if it is "at least debatable" that it is supported by a rational basis. *Id.* This principle applies both to generally applicable zoning decisions and to specific applications of zoning classifications. *Id.* at 480; *see also Blackman v. City of Big Sandy*, 507 F.2d 935, 936 (5th Cir. 1975). Thus, rational basis review in the zoning context is extremely deferential, and Legacy faces a very difficult hurdle prevailing under such a standard.[4]

Here, Legacy alleges that the Ordinance imposes compliance with "burdensome and arbitrary regulations; registration requirements; standards for construction and driveway and deck requirements; and fees" interfering with "Legacy's right to use and enjoy the lots." Dkts. 50, at 16; 43 at 16. Legacy states that the Ordinance "does not advance a legitimate state interest or promote a common good." Dkt. 43, at 16.

The City responds that the Ordinance is rationally related to a legitimate government interest because each of the impositions Legacy complains of "clearly

---

[4] In certain circumstances, a federal court can even go so far as to hypothesize a legitimate purpose with a rational relationship to the city's action at the motion-to-dismiss stage of litigation rather than awaiting summary judgment. *Mahone v. Addicks Utility Dist. of Harris Cnty.*, 836 F.2d 921, 937 (5th Cir. 1988). "The appropriateness of looking beyond the pleadings to perform a rational relationship analysis depends … on a number of factors" including the specific facts pleaded by the plaintiff, the state of the court's knowledge, and the complexity of the official action that is being challenged. *Id.*

further[s] the public welfare and the "spiritual as well as physical, [and] aesthetic" values "public welfare" represents. Dkt. 48, at 25.

> For example…[t]he City's registration, background, and insurance requirements for contractors provide at least some protection and financial security to both the City and its residents by ensuring that contractors working in the Horseshoe Bay community are at least known to the city, have some base level of experience and competency, and are adequately insured. The City's limit on speculative homebuilding seeks to limit the number of vacant structures by restricting the ability to build a large number of homes without a buyer that may then sit uninhabited for extended periods of time. And the City's utility fees … compensate the City for its costs in providing utility service and ensure the presence of equipment necessary to protect the City's sewer infrastructure.

*Id.* at 31.

The City's proffered reasoning supports a finding that it is "at least debatable" that the Ordinance is supported by rational basis. To delve further into the bases behind the City's decision in a run-of-the-mill zoning dispute would improperly result in this Court's become a zoning board of appeal. *Mikeska v. City of Galveston,* 451 F.3d 376, 382 (5th Cir. 2006) (noting that we are to resist becoming "super zoning boards"). The undersigned finds that Legacy has not pleaded facts demonstrating that there is no conceivable rational basis for the enactment of Ordinance 2021-12. Therefore, Legacy has failed to plead sufficient facts to establish a violation of its right to substantive due process with respect to the expected use of the development lots allegedly encumbered by Ordinance 2021-12.

### 3.   Equal Protection

Legacy also alleges that the City violated its right to equal protection. Dkt. 43, at 19. The Equal Protection Clause serves "as a shield against arbitrary

classifications." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 598 (2008). In the absence of a "classification affecting fundamental personal rights or based upon inherently suspect distinctions such as race, religion, or alienage," classifications or unequal treatment are "subject to the same rational basis analysis utilized in due process claims." *Jackson Ct. Condos.*, 874 F.2d at 1079. Despite the Supreme Court's emphasis on "classifications," the Equal Protection Clause "protects persons, not groups." *Engquist*, 553 U.S. at 597. For that reason, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [it] has been irrationally singled out as a so-called 'class of one.'" *Id.* at 601. In other words, "when it appears that the government is singling out an individual, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Id.* at 602.

Thus, to adequately state its "class of one claim," Legacy must allege that (1) it "has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To show differential treatment, a plaintiff must identify a comparator group. *See Integrity Collision Ctr. v. City of Flusher*, 837 F.3d 581, 586 (5th Cir. 2016). "[T]here is no precise formula to determine whether an individual is similarly situated to comparators." *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 687 (S.D. Tex. 2009), *aff'd*, 669 F.3d 225 (5th Cir. 2012). Rather, the court "consider[s] the full variety of factors that an objectively reasonable …

decisionmaker would have found relevant in making the challenged decision." *Id.* at 234 (citation and internal quotation marks omitted).

Legacy fails to plausibly allege that it was intentionally treated differently than others similarly situated. Nowhere in its complaint does it identify any similarly situated entity that was treated differently by the City. Rather, as the City's Motion states, "Legacy's claim of differential treatment under the City's ordinance is affirmatively negated by the plain language of the City's ordinance, which imposes the same or similar requirements on general commercial and general residential contractors." Dkt. 48, at 20 (citing Appendix B, Code of Ordinances, Horseshoe Bay, 3.03.010 (a)(9)(G)).[5] Legacy's equal protection claim should be dismissed.

### 4.   Conspiracy

Pursuant to § 1983, Legacy alleges a conspiracy to violate its due process rights. Dkt. 43, at 18. To hold the private Defendants liable on Legacy's § 1983 claim, they must have engaged in a conspiracy with state actors to violate their constitutional rights. *Tebo v. Tebo,* 550 F.3d 492, 496 (5th Cir. 2008) (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994)). To make such a claim actionable, the private and the public actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. *Id.* A plaintiff must "allege specific facts to show an agreement." *Priester v. Lowndes*

---

[5] The undersigned may take judicial notice of municipal ordinances. *DM Arbor Court, Ltd. v. City of Houston*, No. H-18-1884, 2020 WL 709913 at * 1, n.2 (citing *Matter of Waller Creek, Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989)); *Sanders v. Univ. of Texas Pan Am.*, 776 F. App'x 835, 837 (5th Cir. 2019) ("The district court did not err by taking such judicial notice. It is well settled that courts may take judicial notice of matters of public record") (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

*County,* 354 F.3d 414, 421 (5th Cir. 2004); *Lynch v. Cannatella,* 810 F.2d 1363, 1369 (5th Cir. 1987) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.").

Legacy's due process conspiracy claim must fail because Legacy fails to show a violation of its constitutional rights. Legacy's § 1983 conspiracy claim rests on its alleged rights as to permits and access to the POA's Greenbelt. *See* Dkt. 43, at 19 (stating that by instructing Legacy to "seek approval from Jaffe interests" before the City would consider issuing a construction permit, the City gave Jaffe Interests "discretion by the City to reject development plans" and also stating that defendants conspired to "deny access to the POA [Greenbelt]").  The undersigned has already found that Legacy has not pleaded facts sufficient to show that it has vested property rights in permits and access to the POA Greenbelt. *See supra* Part III.B.2.a.i-ii. Because the due process claims based on those alleged vested property rights fail, any conspiracy claim based on that alleged violation also fails. *Connors v. Graves,* 538 F.3d 373, 378 (5th Cir. 2008) (conspiracy claim is not actionable absent an actual violation of section 1983)). Legacy's § 1983 conspiracy claim should be dismissed.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the City's Partial Motion to Dismiss, Dkt. 48, and **DISMISS** Legacy's § 1983 claims for violations of substantive and procedural due process, equal protection, and conspiracy **WITHOUT**

**PREJUDICE**. Legacy's civil conspiracy claim should be dismissed **WITH PREJUDICE**.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 23, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE