IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LEGACY HOUSING CORPORATION,  §
                             §
        Plaintiff,           §
                             §
v.                           §          1:21-CV-1156-RP
                             §
THE CITY OF HORSESHOE BAY, TEXAS,  §
HORSESHOE BAY PROPERTY OWNERS      §
ASSOCIATION, JAFFE INTERESTS, LP,  §
f/k/a HORSESHOE BAY RESORT LTD.    §
f/k/a HORSESHOE BAY RESORT INC.,   §
and HORSESHOE BAY RESORT           §
DEVELOPMENT, LLC,                  §
                             §
        Defendants.          §

**ORDER**

Before the Court is the City of Horseshoe Bay, Texas's ("the City") Motion for Reasonable Attorneys' Fees and Expenses.[1] (Mot., Dkt. 131). Plaintiff Legacy Housing Corporation ("Legacy") filed a Response, (Dkt. 138), and the City filed a Reply, (Dkt. 143). The City also filed a Second Supplement to its Motion for Reasonable Attorneys' Fees and Expenses, (Dkt. 146), and an amended Bill of Costs, (Dkt. 149), based on the Fifth Circuit affirming this Court's ruling with regard to the City's counterclaim for breach of restrictive covenant. Legacy filed a Response and Objections to the City's Second Supplemental to Motion for Reasonable Attorneys' Fees, (Dkt. 153), and the City replied, (Dkt. 155). Having considered the parties' briefing, the record, and the relevant law, the Court issues the following order.

---

[1] The Court will address the pending attorneys' fees motions filed by Defendant Horseshoe Bay Resort Development LLC, (Dkt. 145), and by Defendant Horseshoe Bay Property Owners Association, (Dkt. 148), by separate order.

1

### I. BACKGROUND

This action arises from a dispute between Legacy, a developer of manufactured homes, and Defendants City of Horseshoe Bay, Horseshoe Bay Property Owners Association ("the POA"), Jaffe Interests, LP ("Jaffe Interests"), and Horseshoe Bay Resort Development, LLC ("HSBR Development") (collectively, "Defendants"). In 2019, Legacy purchased 297 lots within the City (the "development lots"). (2d Am. Compl., Dkt. 43, at 4). Legacy also owns "an approximately 95-acre plot of land . . . adjacent to the City" and within the City's extra-territorial jurisdiction (the "ETJ Property"). (*Id.* at 11; City's Orig. Ans. and Counterclaim, Dkt. 11, at 11; Legacy's Ans., Dkt. 15, at 2). A strip of greenbelt land (within the City's limits) is located between the development lots and the ETJ Property. (City's Orig. Ans. and Counterclaim, Dkt. 11, at 11; Legacy's Ans., Dkt. 15, at 2).

As described by United States Magistrate Judge Dustin Howell in a Report and Recommendation, (Dkt. 127), which was adopted by the Court, (Dkt. 129), Legacy filed a number of claims against Defendants with two primary bases. The Court reviews these claims and the procedural background briefly. First, Legacy challenged a City ordinance as an unconstitutional regulatory taking. (R&R on Mot. Summ. J., Dkt. 127, at 1). Second, Legacy brought claims relating to its construction of a roadway running from Highway 71 at the southernmost end of the ETJ Property, across the ETJ Property, over the greenbelt strip, to a public street that serves some of Legacy's development lots. (*Id.*). These claims included breach of fiduciary duty against the POA; negligence against the POA, Jaffe Interests, and HSBR Development; a claim under 42 U.S.C. § 1983 for a deprivation of property rights against all Defendants; and a civil-conspiracy claim against all Defendants. (*Id.*). The City moved to dismiss all of Legacy's claims but the takings claim and subsequently moved for summary judgment on the takings claim; these motions were granted. (R&R on City's MTD, Dkt. 82; Order Adopting R&R on City's MTD, Dkt. 89; R&R on Mots. Summ. J., Dkt. 127; Order Adopting R&R on Mots. Summ. J., Dkt. 129).

The City also filed a counterclaim for breach of contract/restrictive covenant relating to Legacy's construction of the roadway across the ETJ Property, asserting that Legacy purchased the ETJ Property subject to a Development Agreement that limits the use of the ETJ Property to agriculture, wildlife management, timber land, and the existing single-family residential use of the property.[2] (R&R on Mot. Summ. J., Dkt. 127, at 2). The City argued that the construction of a road across the ETJ Property violated this covenant. (*Id.*). Legacy moved to dismiss the counterclaim for lack of supplemental jurisdiction, which was denied. (R&R on Legacy's MTD, Dkt. 61; Order Adopting R&R on Legacy's MTD, Dkt. 64). The City was later granted summary judgment on its counterclaim. (*Id.* at 20–24; Order Adopting R&R on Mot. Summ. J., Dkt. 129). The Court entered final judgment in favor of Defendants. Legacy appealed, and the Fifth Circuit affirmed this Court's rulings as modified. (Fifth Cir. Mandate, Dkt. 144, at 2–3) (modifying the judgment to dismiss Legacy's regulatory takings claim without prejudice rather than with prejudice and affirming as modified).

The City now seeks recovery of its attorneys' fees and costs "directly attributable to its successful counterclaim against Legacy for breach of the restrictive covenant of the development agreement," including reasonable appellate attorneys' fees and costs incurred by the City in its successful defense of Legacy's appeal. (2d Supp., Dkt. 146, at 2–3).

## II. BILL OF COSTS

The City asks the Court to award reasonable expenses pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. It seeks $12,888.46 associated with expenses for deposition transcripts, videotaping of depositions, copying charges, mailing of documents, and travel (including for depositions and Fifth Circuit oral argument). (Am. Bill of Costs, Dkt. 149, at 1, 3–4).

---

[2] Defendants HSBR Development and Jaffee Interests also counterclaimed for breach of the restrictive covenant and were awarded summary judgment on this claim. (R&R on Mots. Summ. J., Dkt. 127, at 11; Order Adopting R&R on Mots. Summ. J., Dkt. 129).

Though Legacy does not explicitly challenge the Bill of Costs, the Court nonetheless may not award costs not permitted by statute. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("We hold that absent explicit statutory or contractual authorization . . . federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."). The Court's discretion in taxing costs against an unsuccessful litigant is limited to the following recoverable costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title; and
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Although a district court may decline to award costs listed in the statute, it may not award costs omitted from the statute. *See Crawford*, 482 U.S. at 441–42; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). The Court will therefore determine which costs are recoverable.

The City argues, citing cases involving civil rights claims, that it may recover a vast range of out-of-pocket costs. (*See* 2d Supp., Dkt. 146, at 6–7) (first citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395–96 (5th Cir. 2003); and then citing *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)). Those cases, however, involve the recovery of costs under 42 U.S.C. § 1988. Given that the City is solely seeking fees and expenses "including the costs that are recoverable under 28 U.S.C. § 1920 on a bill of costs" that were incurred solely "in the successful prosecution of its counterclaim for Legacy's breach of restrictive covenants," neither *Mota* nor *West* apply. (*See* Mot. Attorneys' Fees, Dkt. 131, at 2).

First, based on the record before the Court, it would be inappropriate to award costs for both the transcript and video recording of Curtis Hodgson's deposition. (*See* Am. Bill of Costs, Dkt.

4

149, at 3). Though the Fifth Circuit recently held that a district court did not abuse its discretion in awarding costs for both written transcripts and a video recording of a deposition, the prevailing party in that case had "met its burden to demonstrate that the video depositions were necessarily obtained for use in this case."[3] *Clouse v. S. Methodist Univ.*, --- F.4th ---, No. 24-10860, 2026 WL 731344, at *5 (5th Cir. Mar. 16, 2026). By contrast, in the instant case, the City's motion does not explain why Mr. Hodgson's deposition must have been videotaped for use at trial. As a result, the Court cannot make any findings regarding the necessity of this cost. *See id.* Accordingly, the Court will decrease the requested award of costs by $1,210.00.

The Court also finds that it would be inappropriate to grant the City travel expenses in the requested amounts of $66.16 in gas mileage to Horseshoe Bay to prepare for a deposition; $322.96 in flight expenses to travel to oral argument; $41.60 in meal expenses for oral argument; $86.40 for taxis related to oral argument; $70.00 in parking expenses for oral argument; and $213.09 in hotel expenses for oral argument. (Am. Bill of Costs, Dkt. 149, at 3–4). *See Coats*, 5 F.3d at 891 (holding that travel expenses are not included in § 1920). The Court will therefore further deduct the requested award of costs by $800.21.

Next, the Court finds that the costs of "Fedex to Federal Court" for $11.31 and "Overnight Delivery Service" to the Fifth Circuit for $41.84 may not be recovered. (*See id.* at 3–4). *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 418 (N.D. Tex. 1997) (citations omitted) (holding that postage is not listed in § 1920 and represents "'overhead' costs, not litigation costs"). The Court will reduce the City's costs by $53.15.

Finally, the City includes vague "copying charges" in its Amended Bill of Costs for $94.35 in August 2023 and additional "copying charges" for $15.45 in May 2025. (*Id.* at 3–4). "Costs of

---

[3] For instance, the videotaped deponents in that case were "all . . . expected to be outside of subpoena range by trial." *Id.*

photocopies obtained for use in the litigation are recoverable upon proof of necessity." *Austin Shuler's Best Lawns, Inc. v. M. Shapiro Mgmt. Co. LLC*, No. 1:23-CV-1394-RP, 2025 WL 1952090, at *6 (W.D. Tex. July 7, 2025) (citing *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, No. CIV.A. H-01-4242, 2006 WL 734396, at *2 (S.D. Tex. Mar. 22, 2006)). Without "an itemized breakdown," the Court cannot determine whether these copies were "necessarily obtained for use in the case rather than obtained simply for the convenience of counsel." *Id.* (quoting *Conoco, Inc.*, 2006 WL 734396, at *2). Because the City "fails to identify what was being copied or why the copies were necessary," the Court will reduce the City's costs by an additional $15.45. Ultimately, the Court will award the City $10,809.65 in costs.

### III. MOTION FOR ATTORNEYS' FEES

In addition to its bill of costs, the City has moved for attorneys' fees under Texas Property Code § 5.006, which states that courts "shall" award reasonable attorneys' fees to "a prevailing party who asserted" an action "based on breach of a restrictive covenant."[4] (Mot. Attorneys' Fees, Dkt. 131; 2d Supp., Dkt. 146). Tex. Prop. Code § 5.006(a). Moreover, § 5.006 mandates that courts determining reasonable fees under this section "shall consider: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the expertise, reputation, and ability of the attorney; and (4) any other factor." Tex. Prop. Code § 5.006(b). The court's award of attorneys' fees under this statute may include appellate attorneys' fees. *Fonmeadow Prop. Owners' Ass'n, Inc. v. Franklin*, 817 S.W.2d 104, 106 (Tex. App.—Houston [1st Dist.] 1991, no writ).

Courts applying Texas law are instructed to apply the lodestar method of calculating attorneys' fees—the product of reasonable hours times a reasonable rate—to "any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed."

---

[4] Given that Texas law governed the City's counterclaim for breach of restrictive covenant, the City's fee award is governed by Texas law. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and reasonable of fees awarded where state law supplies the rule of decision.").

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494–95, 498 (Tex. 2019). Texas courts have applied the lodestar method of calculating reasonable attorneys' fees to cases involving claims under § 5.006. *See, e.g., Walker v. Wolfe Airpark Civic Club, Inc.*, No. 14-23-00748-CV, 2025 WL 1037265, at *4–5 (Tex. App.—Houston [14th Dist.] Apr. 8, 2025, pet. denied). The City suggests that this Court should apply the lodestar method in this case, (Mot. Attorneys' Fees, Dkt. 131, at 3–5), and the Court agrees.[5]

Under the two-step lodestar method for determining attorney's fees, the "starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture*, 578 S.W.3d at 497–98. The court may then "adjust[] the base calculation up or down based on relevant considerations." *Id.* at 500. "[A]n enhancement or reduction of the base lodestar value cannot be based on a consideration hat is subsumed in the first step of the lodestar method."[6] *Id.*

The City moves for attorneys' fees on its counterclaim for breach of a restrictive covenant in the development agreement in the amount of $165,675.00 through final judgment and for time spent briefing this Court on its motion for attorneys' fees; appellate fees in the amount of $58,113.50; and post-judgment interest from the date of final judgment (May 13, 2024),

---

[5] Legacy does not dispute that the lodestar method should be used to calculate attorneys' fees in this case.
[6] Courts may consider the factors outlined in *Arthur Andersen & Co. v. Perry Equipment Corp.*, but "considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* at 501 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). The factors provided in *Arthur Andersen* are "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Arthur Andersen*, 945 S.W.2d at 818.

compounded annually, at a rate of 5.13%. (2d Supp., Dkt. 146, at 2, 8). They support their motion

with detailed billing records. (Billing Records Until Final J., Dkt. 131, at 23–104; Billing Records on

Mot. Attorneys' Fees, Dkt. 143-1, at 7; Appellate Billing Records, Dkt. 146-1, at 7–10).

### A. Billing Entries Prior to Final Judgment

The City provides the following information to summarize its lodestar calculation up until

when the Court entered final judgment:

| Attorney | Hours | Year Licensed | Rate | Lodestar Fee |
|---|---|---|---|---|
| Gunnar Seaquist | 250.1 | 2008 | $355 | $88,875.50 |
| Joshua Katz | 135.2 | 2005 | $355 | $47,996.00 |
| Philip Arnold | 48.8 | 2007 | $330 | $16,104.00 |
| Sara Labashosky | 7.3 | 2015 (PA/NJ), 2022 (TX) | $225 | $1,642.50 |
| **Paralegal** | | | | |
| Jeffrey Moore | 1.2 | | $190 | $228.00 |
| Sandra Ray | 2.8 | | $190 | $532.00 |
| Becky Vragel | 0.2 | | $190 | $38.00 |
| Rae Fregeolle-Burk | 1.1 | | $190 | $209.00 |
| Arlyn LaBelle | 1.8 | | $190 | $342.00 |
| **Total Hours** | **448.5** | | **Requested Total Lodestar Fee** | **$155,877.00** |

(Mot. Attorneys' Fees, Dkt. 131, at 10–11). Counsel for the City argue that these rates are reasonable

based on the market rate in this District and on the lawyers' and paralegals' years of experience. (*Id.*

at 10). They assert that the base lodestar calculation of $155,877.00 "captures all of the factors

relevant to setting a reasonable fee for this action" and do not seek an enhancement based on the

*Arthur Andersen* factors. (*Id.* at 11–12). They additionally note that they "exercised billing judgment

and excluded [their] time expended in briefing the City's successive motions to dismiss Legacy's

facially meritless section 1983 and state law claims against the City." (Seaquist Aff., Dkt. 131, at 19).

The City's counsel also claims that, because the "prosecution of the City's counterclaims and

Legacy's claims involved a common core of facts . . . . [A]ll of the activities for which the City seeks

to recover its attorney's fees advanced the City's counterclaim in addition to the City's defense of Legacy's claims." (*Id.*).

Before reaching the hours spent on recoverable work, the Court analyzes whether the rates charged by the attorneys and paralegals were reasonable. The Court agrees with counsel for the City that the rates in fact appear to be "generally **below** prevailing market rates for similar litigation work in the Western District of Texas and Travis County," particularly for a law firm and attorneys with such specialized experience in the area at issue. (Seaquist Aff., Dkt. 131, at 18–19) (emphasis added). Legacy does not challenge the reasonableness of the rates billed by the City's attorneys or the attorneys' paralegals. Thus, the rates charged by the City's attorneys and paralegals were reasonable.

The Court now reaches Legacy's arguments opposing the City's Motion for Attorneys' Fees. First, Legacy argues that the City's attorneys cannot recover attorneys' fees on the City's counterclaim incurred prior to work on the counterclaim. (Resp. to 2d Supp., Dkt. 153, at 3). It argues that none of the legal work billed up until that point could have a connection to the counterclaim. (*Id.*). The City replies, noting that Legacy does not cite any legal authority for its position, that the time spent prior to January 21, 2022, was necessary to ascertain the background facts of the case and determine whether the City may file its claims as a counterclaim or should file a standalone suit. (Reply to 2d Supp., Dkt. 155, at 5). The Court strongly agrees with the City. The City's attorneys must have reviewed the allegations in the Original Complaint and conferred with the City's representatives to determine whether the City had a valid permissive counterclaim. The Court will not subtract the requested attorneys' fees for hours spent prior to January 21, 2022, merely based on when that work occurred.

Second, Legacy argues that the City has failed to sufficiently segregate fees between claims for which fees are recoverable and claims for which they are not. (Resp. to 2d Supp., Dkt. 153, at 3–9). Under Texas law, because payment of attorneys' fees is only permitted if expressly authorized by

statute or by a contract between the parties, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310, 313 (Tex. 2006). "It is only when legal services advance both recoverable and unrecoverable claims that the services are so intertwined that the associated fees need not be segregated." *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007). However, "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Id.* (quoting *Chapa*, 212 S.W.3d at 314). Moreover, the Supreme Court of Texas has acknowledged "that many if not most legal fees . . . cannot and need not be precisely allocated to one claim or the other" where claims are based on a common set of underlying facts. *Chapa*, 212 S.W.3d at 313. "To the extent [certain legal services] would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Id.*

> Legacy argues:
>
> On only 14 occasions in the itemization of attorneys' fees sought by the City wherein "counterclaim" is mentioned does there appear to be an effort by the City to segregate fees involving the City's counterclaim. However, for only seven of those billing entries that mention the City's counterclaim is there complete and necessary segregation. In the other seven entries, work on the City's counterclaim is not segregated and is block billed along with tasks for which attorneys' fees are not recoverable."

(Resp. to 2d Supp., Dkt. 153, at 6–7). Legacy also attaches an exhibit including a table of time entries and associated fees requested by the City that Legacy claims are not obviously related to the City's counterclaim or are not properly segregated. (Challenged Time Entries, Dkt. 138-1). Legacy asks the Court to not include fees for these challenged time entries in the award of attorneys' fees.

The Court mostly disagrees with Legacy's arguments regarding segregation of fees. For one, many of Legacy's arguments challenging certain time entries are frivolous on their face. As an example, Legacy appears to be challenging the City's time spent analyzing federal court supplemental jurisdiction, (Challenged Time Entries, Dkt. 138-1, at 3), yet supplemental jurisdiction is what

10

enabled the City to bring its counterclaim in this lawsuit in the first place. (*See* City's Ans. & Counterclaim, Dkt. 11, at 10). Legacy also appears to challenge the City's review of the development agreement that is at the very heart of the City's claim for breach of a restrictive covenant. (Challenged Time Entries, Dkt. 138-1, at 3). The Court reminds counsel for Legacy of their duty under Federal Rule of Civil Procedure 11 to ensure that any legal contentions submitted to the Court "are warranted by existing law or by a nonfrivolous argument." Fed. R. Civ. P. 11(b).

Moreover, the Court also declines to reduce its award of fees based on time entries that would have been incurred based on the City's counterclaim alone, even if these efforts also aided other claims. (*See, e.g.*, Challenged Time Entries, Dkt. 138-1, at 7–9) (challenging time entries regarding the parties' Rule 26(f) conference, initial disclosures, and discovery requests).[7]

The Court does agree with Legacy, however, that the City has not met its burden to show that certain time entries are recoverable. The Court has completed a detailed review of the City's attorneys' billing records up until final judgment, (Dkt. 131), and billing records for defending Legacy's appeal, (Dkt. 146-1). Regarding the fees requested for work done prior to final judgment, the Court finds that 31.0 hours claimed by Mr. Seaquist, 6.7 of the hours claimed by Mr. Katz, and 18.7 hours claimed by Mr. Arnold were not sufficiently shown to be related to the City's counterclaim or to another claim for which the City must prevail to also prevail on its counterclaim. As an example, the Court finds that it would not be reasonable for the City to recover fees related to the depositions of Legacy's expert Chad Denton, as he was retained by Legacy for its regulatory takings claim relating to the development lots. (*See* Mot. Exclude Hodgson, Dkt. 68, at 6; Mot.

---

[7] The parties' Rule 26(f) conference covered all claims and counterclaims; the fact that it related to more than just the City's counterclaim for breach of a restrictive covenant does not bar recovery. Similarly, time spent on initial disclosures and discovery requests would be necessary even if the breach of restrictive covenant claim had been brought on its own. *See Chapa*, 212 S.W.3d at 313 ("Requests for standard disclosures, proof of background facts, . . . discovery motions and hearings, . . . and a host of other services may be necessary whether a claim is filed alone or with others.").

Exclude Denton, Dkt. 91, at 4). There is no indication that the City relied upon any of Mr. Denton's testimony to prosecute its counterclaim or a related issue necessary to succeed on its counterclaim.[8] The Court will therefore deduct time billed related to Mr. Denton's deposition and the motion to exclude him. The Court in its discretion will also deduct other time entries where the City has not met its burden to show that its work was related to its counterclaim.[9] Based on the rates for these attorneys, the Court deducts $19,554.50 from the requested fee award.

The Court also agrees with Legacy that certain redacted time entries are too vague for the Court to determine whether the time billed was necessary and reasonable. Specifically, due to redactions, the Court finds that it would be inappropriate to award fees for 8.7 of the hours billed by Mr. Seaquist, 0.4 hours billed by Mr. Katz, and 10.3 hours billed by Mr. Arnold, as the Court cannot form an opinion on the reasonable of the fees. *See Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees. . . . Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended."); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) (noting that "[l]itigants take their chances when submitting [vague] fee applications," because the district court has "sufficiently leeway within which to *accept or reject*" such fee applications") (emphasis in original). For instance, time entries for "Analyze legal and factual issues re: [REDACTED]," "Analyze [REDACTED]," or "Telephone call with Chris Hornsby regarding [REDACTED]" are

---

[8] Though Legacy's expert Curt Hodgson also primarily testified about matters related to the development lots and Legacy's regulatory takings claim, Mr. Hodgson did briefly touch on the ETJ Property and development agreement, and the City relies upon that testimony in its successful motion for summary judgment on its counterclaim. (City's Mot. Summ. J., Dkt. 105, at 19–20).

[9] As another example, the Court deducts time entries that appear solely related to Legacy's claims regarding zoning requirements or other city ordinances. (*See, e.g.*, Billing Records Until Final J., Dkt. 131, at 23) (requesting fees for "[a]nalyzing city ordinances").

12

too vague for the Court to classify them. (*See* Time Entries, Dkt. 131, at 28). Based on the rates for these attorneys, the Court deducts $6,629.50 from the fee award for certain redacted time entries.

Next, Legacy argues that certain paralegal time sought by the City is not recoverable. A party may recover attorneys' fees for paralegal time where that work is typically done by an attorney and where there is evidence in the record establishing that the paralegal is qualified to perform substantive legal work. *See Gill Sav. Ass'n v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 702–05 (Tex. App.—Dallas 1988, writ denied); *Hunt Dev. Group, L.P. v. Dick Corp.*, No. EP-09-CA-313-FM, 2010 WL 11601053, at *7 (W.D. Tex. Dec. 8, 2010) (citing *id.* at 702). Legacy asserts that the fees requested by the City for paralegal work are for clerical work and thus not recoverable. (Resp. 2d Supp., Dkt. 153, at 9–10). The Court largely finds that the paralegal fees sought by the City are reasonable, but a few of these time entries were for clerical work only—namely, filing the response to a motion on March 18, 2022 (0.1 hours) and downloading discovery documents on August 12, 2022 (1.1 hours). The Court will therefore deduct $228 from the fee award.

Based on the foregoing, the Court begins with a lodestar amount of $129,465 in attorneys' fees for work done prior to entry of final judgment. The Court now considers the twelve *Arthur Andersen* factors. The Court in particular notes that the City's summary judgment briefing on its counterclaim for breach of a restrictive covenant was, though of course effective, relatively simple for such experienced attorneys, nor did it involve a novel or difficult question. The Court therefore finds that two of the *Arthur Andersen* factors support a small departure from the lodestar amount in this case. For work done prior to final judgment, the Court will award the City 90% of the calculated lodestar fee, or $116,518.50.

### B. Billing Entries Post-Final Judgment

The City additionally requests $9,978.00 for efforts "necessary to the City's efforts to recover" attorneys' fees. (Reply to Mot. Attorneys' Fees, Dkt. 146, at 9). Finally, they provide a lodestar fee table for their appellate fees:

| Attorney | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Gunnar Seaquist | 250.1 | $355 | $31,879 |
| Joshua Katz | 135.2 | $355 | $27,015.50 |
| **Total Hours** | **165.9** | **Requested Total Lodestar Fee** | **$58,894.50** |

(2d Supp., Dkt. 146, at 5). Legacy argues that "[a]lmost all of the City's appellate fee billing entries are . . . vague and insufficient entries." (Resp. 2d Supp., Dkt. 153, at 5) (citing Dkt. 146-1). The City had argued in its Second Supplement:

> The [issues in this case] are even more intertwined on appeal, where they are all consolidated into a singular course of research, briefing, and oral argument. Consequently, the legal tasks involved in handling the appeal, including but not limited to, analyzing Legacy's appellate brief, researching and drafting the City's Appellee brief, analyzing Legacy's reply, and preparing for, traveling to, and participating in oral argument, were each necessary to, and directly advanced, the City's prevailing on its counterclaim on appeal.

(2d Supp., Dkt. 146, at 6). The City's billing entries for its appeal are noticeably briefer than its entries related to work at the district court level. The entries do not attempt to segregate time spent on the various issues on appeal. For example:

| | | | | | | |
|---|---|---|---|---|---|---|
| Client: 003120 - City of Horseshoe Bay | | | | Matter: 000002 - Legacy Housing Corporation Suit | | |
| 925569 | 12/31/2024 | GPS | P | Attention to appellee brief. | 1.0 | $355.00 |
| 926659 | 1/6/2025 | GPS | P | Review and revise brief. | 2.5 | $887.50 |
| 926717 | 1/13/2025 | GPS | P | Draft Appellee Brief. | 2.0 | $710.00 |
| 927162 | 1/16/2025 | JDK | P | Draft and revise Appellate brief. | 1.6 | $568.00 |
| 927457 | 1/18/2025 | GPS | P | Email update to J. Koska. | 0.2 | $71.00 |
| 927175 | 1/21/2025 | JDK | P | Draft and revise appellate brief. | 1.4 | $497.00 |
| 927526 | 1/21/2025 | GPS | P | Analyze briefing materials; Prepare for and call into executive session. | 1.6 | $568.00 |
| 927583 | 1/25/2025 | GPS | P | Review record citations; revise brief. | 4.5 | $1,597.50 |
| 927584 | 1/26/2025 | GPS | P | Continue revising appellate brief. | 3.7 | $1,313.50 |
| 927479 | 1/27/2025 | JDK | P | Draft and revise appellate brief. | 1.3 | $461.50 |
| 927599 | 1/27/2025 | GPS | P | Continue revising Appellee Brief. | 4.2 | $1,491.00 |
| 927605 | 1/28/2025 | GPS | P | Continue draft/revisions to Appellee brief. | 5.8 | $2,059.00 |
| 927495 | 1/29/2025 | JDK | P | Draft, revise, and file Appellate Brief and Appendix. | 7.4 | $2,627.00 |
| 927496 | 1/29/2025 | JDK | P | Analyze legal and factual issues re: POA brief. | 0.3 | $106.50 |
| 927585 | 1/29/2025 | GPS | P | Finalize draft; revise appellee brief; coordinate filing of same. | 6.0 | $2,130.00 |

14

(Appellate Billing Records, Dkt. 146-1, at 8).

Unlike the City, the Court does find it worth considering what proportion of appellate work went towards defense of the City's counterclaim. Notably, while only approximately **four pages** of the argument section of the City's appellate brief related to Legacy's breach under the development agreement,[10] approximately **twenty-five pages** of the argument section are devoted to Legacy's takings claims—which the City is not seeking fees for. The Court is not convinced by the City's argument that the mere fact these claims were briefed and argued contemporaneously means that it may completely recover for these efforts, nor is the Court convinced that all of these entries are "discrete legal services [that] advance both a recoverable and unrecoverable claim." *See Chapa*, 212 S.W.3d at 313–14. The City "take[s] [its] chances" in submitting these billing entries. *See Kellstrom*, 50 F.3d at 327. Of course, "the failure to segregate does not mean that a party cannot recover any of its attorney's fees" because "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (citing *Chapa*, 212 S.W.3d at 314). In such a situation, the Fifth Circuit has approved of the district court "awarding a percentage of [the prevailing party's] fees rather than denying recovery of fees completely." *See id.* Having reviewed the records in this case and considering "whether discrete legal services" provided on appeal "advance[d] both a recoverable and unrecoverable claim," the Court finds it reasonable to award the City 40% of its claimed appellate attorneys' fees, or $23,557.80.[11]

Additionally, Legacy does not challenge the City's request to recover $9,798.00 in fees in connection with drafting its Motion for Attorneys' Fees and responding to Legacy's arguments in opposition. (*See* Resp. 2d Supp., Dkt. 153; Challenged Time Entries, Dkt. 153-1) (not responding to

---

[10] *Legacy v. City of Horseshoe Bay*, No. 24-50462, Dkt. 60-1, at 54–57 (5th Cir. Jan. 29, 2025).
[11] Given the City's failure to segregate fees, the Court cannot complete a traditional lodestar analysis.

the City's request for fees in connection with briefing its motion for attorneys' fees and not challenging those time entries in its exhibit). The Court finds this request for fees to be reasonable and sees no reason to enhance or deduct from the base amount using the lodestar method and *Arther Andersen* factors. Accordingly, the Court will award the City an additional $9,798.00 in fees. The City's award of post-judgment attorneys' fees therefore equals $33,355.80.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the City's Motion for Attorneys' Fees, (Dkt. 131), supplemented by its Second Supplement to its Motion for Attorneys' Fees, (Dkt. 146), is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the City is awarded $149,874.30 in attorneys' fees.

**IT IS FURTHER ORDERED** that the City is awarded $10,809.65 in costs.

**IT IS FINALLY ORDERED** that the sums awarded above shall bear post-judgment interest from May 13, 2024, compounded annually, at a rate of 5.13% pursuant to 28 U.S.C. § 1961, until paid in full.

**SIGNED** on March 31, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

16