IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEGACY HOUSING CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:21-CV-1156-RP |
| | § | |
| THE CITY OF HORSESHOE BAY, TEXAS, | § | |
| HORSESHOE BAY PROPERTY OWNERS | § | |
| ASSOCIATION, JAFFE INTERESTS, LP, | § | |
| *f/k/a* HORSESHOE BAY RESORT LTD. | § | |
| *f/k/a* HORSESHOE BAY RESORT INC., | § | |
| and HORSESHOE BAY RESORT | § | |
| DEVELOPMENT, LLC, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court is Defendant Horseshoe Bay Resort Development, LLC's ("HSBR Development") Amended Motion for Attorney Fees, (Dkt. 145), and Defendant Horseshoe Bay Property Owners Association, Inc.'s ("the POA") Amended Motion for Attorney's Fees, (Dkt. 148). Plaintiff Legacy Housing Corporation ("Legacy") filed a Response to HSBR Development's motion, (Dkt. 151), and a Response to POA's motion, (Dkt. 152). HSBR Development and the POA replied in support of their respective motions. (HSBR Dev. Reply, Dkt. 156; POA Reply, Dkt. 158). Having considered the parties' briefing, the record, and the relevant law, the Court issues the following order.

## **I. BACKGROUND**

This action arises from a dispute between Legacy, a developer of manufactured homes, and Defendants City of Horseshoe Bay, the POA, Jaffe Interests, LP ("Jaffe Interests"), and HSBR Development (collectively, "Defendants"). In 2019, Legacy purchased 297 lots within the City (the "development lots"). (2d Am. Compl., Dkt. 43, at 4). Legacy also owns "an approximately 95-acre

plot of land . . . adjacent to the City" and within the City's extra-territorial jurisdiction (the "ETJ Property"). (*Id.* at 11; City's Orig. Ans. and Counterclaim, Dkt. 11, at 11; Legacy's Ans., Dkt. 15, at 2). A strip of greenbelt land (within the City's limits) is located between the development lots and the ETJ Property. (City's Orig. Ans. and Counterclaim, Dkt. 11, at 11; Legacy's Ans., Dkt. 15, at 2).

As described by United States Magistrate Judge Dustin Howell in a Report and Recommendation, (Dkt. 127), which was adopted by the Court, (Dkt. 129), Legacy filed a number of claims against Defendants with two primary bases. The Court reviews these claims and the procedural background briefly. First, Legacy challenged a City ordinance as an unconstitutional regulatory taking. (R. & R. on Mots. Summ. J., Dkt. 127, at 1). Second, Legacy brought claims relating to its construction of a roadway running from Highway 71 at the southernmost end of the ETJ Property, across the ETJ Property, over the greenbelt strip, to a public street that serves some of Legacy's development lots. (*Id.* at 2–3). These claims included breach of fiduciary duty against the POA; negligence against the POA, Jaffe Interests, and HSBR Development; a claim under 42 U.S.C. § 1983 for a deprivation of property rights against all Defendants; and a civil-conspiracy claim against all Defendants. (*Id.* at 3). Legacy also asked the Court to enter a declaratory judgment finding that Legacy owns the section of the greenbelt at issue in this case under the strip-and-gore doctrine. (*Id.*).

Subsequently, HSBR Development filed counterclaims for breach of restrictive covenant and for a declaratory judgment regarding Legacy's construction of a roadway on Lot K7156. (HSBR Dev. Am. Counterclaims, Dkt. 59). HSBR Development moved for summary judgment on Legacy's strip-and-gore claim, § 1983 conspiracy claim, civil-conspiracy claim, and negligence claim, as well as on its own counterclaims for breach of restrictive covenant and request for declaratory judgment. (HSBR Dev. Mot. Summ. J., Dkt. 99). The POA moved for summary judgment on Legacy's strip-and-gore claim, § 1983 conspiracy claim, civil-conspiracy claim, breach of fiduciary duty claim, and

negligence claim. (POA Mot. Summ. J., Dkt. 101). The Court granted HSBR Development and the

POA summary judgment on Legacy's claims against them. (Order on Mots. Summ. J., Dkt. 129, at

4). The Court also granted HSBR Development summary judgment on its counterclaims against

Legacy. (*Id.*). HSBR Development and the POA now move for attorneys' fees and costs as the

prevailing parties. (HSBR Dev. Mot., Dkt. 145; POA Mot., Dkt. 148).

## II. BILL OF COSTS

The Court may only award costs permitted by statute. *See Crawford Fitting Co. v. J. T. Gibbons,*

*Inc.*, 482 U.S. 437, 445 (1987) ("We hold that absent explicit statutory or contractual authorization . .

. federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."). The Court's

discretion in taxing costs against an unsuccessful litigant is limited to the following recoverable costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use
> in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where
> the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title; and
> (6) Compensation of court appointed experts, compensation of interpreters, and
> salaries, fees, expenses, and costs of special interpretation services under section
> 1828 of this title.

28 U.S.C. § 1920. Although a district court may decline to award costs listed in the statute, it may

not award costs omitted from the statute. *See Crawford Fitting Co.*, 482 U.S. at 441–42; *Coats v. Penrod*

*Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). Additionally, a prevailing party awarded fees under 42

U.S.C. § 1988 may recover "all reasonable out-of-pocket expenses, including charges for

photocopying, paralegal assistance, travel, and telephone . . . because they are part of the costs

normally charged to a fee-paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch.*

*Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). That party may also recover "expert fees as part of the

attorney's fee." 42 U.S.C. § 1988(c).

### A. HSBR Development's Bill of Costs

HSBR Development moves for $13,398.19 in costs under 28 U.S.C. § 1920 and 42 U.S.C. § 1988.[1] (HSBR Dev. Mot., Dkt. 145, at 2, 8; HSBR Dev. Bill of Costs, Dkt. 145-3, at 1). Legacy's Response in opposition to HSBR Development's motion does not address the claimed expenses, but the Court must nonetheless omit the requested costs not permitted by statute. *See Crawford Fitting Co.*, 482 U.S. at 445.

First, the Court will not permit recovery for "Copy of Moravitz Deposition Video" ($258.83) or "Deposition Video of Sandra Moravitz" ($255.00). (HSBR Dev. Bill of Costs, Dkt. 145-3, at 1). The "lynchpin" of § 1920(2), which allows for recovery for deposition transcripts, is "necessity, not convenience." *Clouse v. S. Methodist Univ.*, 170 F.4th 367, 374 (5th Cir. 2026). Though the Fifth Circuit recently held that a district court did not abuse its discretion in awarding costs for both written transcripts and a video recording of a deposition, the prevailing party in that case had "met its burden to demonstrate that the video depositions were necessarily obtained for use in this case."[2] *Id.* at 375. By contrast, in the instant case, HSBR Development seeks fees for the transcript of Ms. Moravitz's deposition, a video of her deposition, and a copy of that video, with no explanation for why her deposition must have been videotaped for use at trial. (*See id.*). As a result, the Court cannot make any findings regarding the necessity of the video or a copy of the video. *See id.* Nor does the Court find recovery under 42 U.S.C. § 1988 appropriate. The Court will therefore decrease the requested award of costs by $513.83.

---

[1] The Court may allow HSBR Development to recover certain expenses as fees under § 1988 given that it is allowing HSBR Development to recover attorneys' fees for its defense against Legacy's § 1983 conspiracy claim. *See infra* Section III(A). Though recovery of these costs under § 1988 is technically a part of an attorneys' fee award, the Court includes them in this section of its Order based on HSBR Development's inclusion of these expenses on its Bill of Costs.

[2] For instance, the videotaped deponents in *Clouse* were "all . . . expected to be outside of subpoena range by trial." *Id.*

Second, the Court finds that HSBR Development may not recover its mediation costs. Mediation costs are not included in 28 U.S.C. § 1920. Additionally, based on the Fifth Circuit's holding that mediation costs are not taxable expenses under Title VII's similar attorneys' fees and costs provision, 42 U.S.C. § 2000e-5(k), the Court finds that mediation costs are also not taxable under § 1988. *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529–30 (5th Cir. 2001). The Court will therefore decrease the requested award by another $600.00.

Third, the Court finds it inappropriate to award $2,500.00 for "[e]xpenses for moot court for Fifth Circuit argument." (*See id.*). It is not clear what these expenses were,[3] making the Court unable to determine whether $2,500.00 is a reasonable amount or whether these were expenses that would normally be billed to a fee-paying client. Accordingly, the Court will omit the moot court expense.

The Court otherwise finds that the requested costs for depositions are reasonable and may be recovered pursuant to 28 U.S.C. § 1920 and that the billed expenses for records fees, postage, photocopies, and travel are reasonable and may be recovered as "reasonable out-of-pocket expenses" under 42 U.S.C. § 1988. The Court will therefore award HSBR Development $9,784.36 in costs and out-of-pocket expenses.

### B. The POA's Bill of Costs

The POA moves for recovery of $26,765.38 in expenses. (Rojo Aff., Dkt. 148-1, at 4–5; Am. Bill of Costs, Dkt. 150, at 1). As with HSBR Development's motion, notwithstanding Legacy's lack of explicit opposition to any sought-after expenses included in the POA's Amended Bill of Costs, the Court reviews the requested expenses to ensure they are recoverable under either 28 U.S.C.

---

[3] The Court notes that HSBR Development is separately seeking $2,850.00 in attorney's fees related to the moot court. (HSBR Dev. Att'y Billing Records, Dkt. 145-2, at 17).

§ 1920 or 42 U.S.C. § 1988.[4] *See Crawford Fitting Co.*, 482 U.S. at 445 (holding that courts awarding litigation costs are bound by statutory limitations).

First, the Court will omit the cost of videotaping Taylor Major's deposition. The POA seeks $1,629.00 for the transcript of this deposition and $848.75 for the videotaping of this deposition. (Rojo Aff., Dkt. 148-1, at 4–5). There is no explanation for why both a video recording and written transcript of this deposition were necessary. *See Clouse*, 170 F.4th at 374. *See also* Section II(A), *supra* (denying recovery of costs for a video deposition based on the same reasoning). The Court will therefore reduce the requested award of costs by $848.75.

Second, as the Court did for HSBR Development's request for costs, the Court will omit the requested $600.00 for mediation costs. *See supra* Section II(A) (explaining why HSBR Development could not recover costs spent on mediation). The Court will also deduct the requested $217.03 for a meal purchased during the full-day mediation.

The Court otherwise finds that the requested costs for depositions are reasonable and may be recovered pursuant to 28 U.S.C. § 1920 and that the billed expenses for experts, courtroom demonstratives, and travel may be recovered as "reasonable out-of-pocket expenses" under 42 U.S.C. § 1988. The Court will therefore award the POA $25,099.60 in costs and out-of-pocket expenses.

### III. MOTION FOR ATTORNEYS' FEES

Courts applying Texas law are instructed to apply the lodestar method of calculating attorneys' fees—the product of reasonable hours times a reasonable rate—to "any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed."

---

[4] The Court may allow the POA to recover certain expenses as fees under § 1988 given that it is allowing the POA to recover attorneys' fees for its defense against Legacy's § 1983 conspiracy claim. *See infra* Section III(B). Though recovery of these costs under § 1988 is technically a part of an attorneys' fee award, the Court includes them in this section of its Order based on the POA's inclusion of these expenses on its Bill of Costs.

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494–95, 498 (Tex. 2019). Under the two-step lodestar method for determining attorneys' fees, the "starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* at 497–98. The court may then "adjust[] the base calculation up or down based on relevant considerations." *Id.* at 500. "[A]n enhancement or reduction of the base lodestar value cannot be based on a consideration that is subsumed in the first step of the lodestar method."[5] *Id.*

Under Texas law, because payment of attorneys' fees is only permitted if expressly authorized by statute or by a contract between the parties, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310, 313 (Tex. 2006). "It is only when legal services advance both recoverable and unrecoverable claims that the services are so intertwined that the associated fees need not be segregated." *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007). However, "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Id.* (quoting *Chapa*, 212 S.W.3d at 314). Moreover, the Supreme Court of Texas has acknowledged "that many if not most legal fees . . . cannot and need not be precisely allocated to one claim or the other" where claims are based on a

---

[5] Courts may consider the factors outlined in *Arthur Andersen & Co. v. Perry Equipment Corp.*, but "considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* at 501 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). The factors provided in *Arthur Andersen* are "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Arthur Andersen*, 945 S.W.2d at 818.

common set of underlying facts. *Chapa*, 212 S.W.3d at 313. "To the extent [certain legal services] would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Id.* Additionally, where success on a counterclaim also requires a successful defense against a claim, the prevailing party need not segregate its counterclaim-related fees from the fees necessary to defend against the related claim. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Additionally, pursuant to 42 U.S.C. § 1988, a prevailing defendant may only be awarded attorneys' fees in a case brought under 42 U.S.C. § 1983 if "the plaintiff's underlying claim was frivolous, unreasonable, or groundless." *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022) (quoting *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009)). "A claim is frivolous under § 1988 if it is not 'colorable' and lacks 'arguable merit.'" *Haygood v. Morrison*, 116 F.4th 439, 444–45 (5th Cir. 2024) (quoting *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204 (5th Cir. 2023)). In determining whether a plaintiff's claim was frivolous, a district court may consider various factors, including, but not limited to, "(1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, . . . (3) whether the district court dismissed the case or held a full-blown trial," *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991), and (4) "whether the claims were foreclosed by squarely controlling precedent." *Haygood*, 116 F.4th at 444–45. As with claims brought under Texas law, the Fifth Circuit has approved of using the lodestar method to calculate attorneys' fees awarded under § 1988. *Id.* at 446–47.

### A. HSBR Development's Motion for Attorneys' Fees

HSBR Development requests $159,250 in attorneys' fees. (HSBR Dev. Mot., Dkt. 145, at 2). It claims that its attorneys' fees are recoverable for its counterclaims and for its defense against

8

Legacy's claims pursuant to the Declaration of Reservations[6] ("the Declaration"), (Dkt. 99-1, at 50), Texas Property Code § 5.006, and 42 U.S.C. § 1988. (*Id.*). It also contends that its attorneys' hourly rates and overall amount requested are reasonable. (Miller Decl., Dkt. 145-1, at 1–3).

### 1. Recoverable and Unrecoverable Claims and Defenses

The Court first considers whether HSBR Development may recover under 42 U.S.C. § 1988 for successfully defending against Legacy's conspiracy claim brought under 42 U.S.C. § 1983. HSBR Development contends that it should be granted attorneys' fees under § 1988 because (1) Legacy's § 1983 claim against it "was groundless and unreasonable"; (2) Legacy's underlying § 1983 claim against the City of Horseshoe Bay was dismissed at the pleadings stage; and (3) Legacy never established a prima facie case and a full trial was not held on its § 1983 claim. (HSBR Dev. Mot., Dkt. 145, at 4–5). Legacy responds that "HSBR Development failed to meet its burden for an award of attorney fees under § 1988," and recites case law relating to this burden, though it provides scant substantive analysis and does not meaningfully connect the facts of this case to its cited precedent. (Resp., Dkt. 151, at 10–11).

Though the Court acknowledges that an award of attorneys' fees is "presumptively unavailable" in this context, the Court finds that HSBR Development has successfully made a showing that Legacy's § 1983 claim was frivolous. *See Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001) ("[A]ttorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit."). As United States Magistrate Judge Dustin Howell found, (Dkt. 127), and this Court adopted, (Dkt. 129), it was evident that the conveyance of the lots from Legacy's predecessors-in-interest did not include the

---

[6] Legacy bought its lots subject to the Declaration, which included restrictive covenants that ran with the lots. (Hodgson Dep., Dkt. 99-1, at 11).

greenbelt strips.[7] (*See* R. & R. on Mots. Summ. J., Dkt. 127, at 12). In fact, the Court had already held months prior that Legacy had failed to sufficiently plead a vested property right in the greenbelt strips. (*See* R. & R. on City's Mot. to Dismiss, Dkt. 82, at 27; Order Adopting R. & R. on City's Mot. to Dismiss, Dkt. 89). As such, Legacy's continued assertion that it possessed a protected right to build a roadway over the greenbelt was groundless, and its § 1983 conspiracy claim based on denial of access to the greenbelt strips was likewise groundless. The Court therefore will grant attorneys' fees to HSBR Development based on its successful defense against Legacy's § 1983 conspiracy claim.

Additionally, the Court finds that HSBR Development's defense against Legacy's § 1983 claim is "so closely interwoven" with HSBR Development's defense against Legacy's strip-and-gore claim that the Court need not, and could not, segregate them. Given that Legacy's failure to prove its strip-and-gore claim is what caused its § 1983 conspiracy claim to fail, "separation of the work done on each issue is impracticable." *See Haygood*, 116 F.4th at 446 n.10 (citing *Mota*, 261 F.3d at 528) (holding that it was not error for the district court to "rely entirely on the federal standards in calculating the fee award" where there "was extensive overlap between" the plaintiff's § 1983 claim and state-law claim).

The Court next addresses recovery of fees for HSBR Development's breach of restrictive covenant counterclaim and for its defense against Legacy's negligence claim, civil-conspiracy claim, and claim for declaratory relief. The Declaration of Reservations provides:

> If any Owner of any Lot or Land shall violate or attempt to violate this Declaration or any of the Conditions or covenants herein, it shall be lawful for Declarant, the Committee or any Members thereof, the Association, or any Owner of any Lot or Land in the Subdivision to prosecute any proceeding at law or in equity against the person or persons violating or attempting to violate this Declaration or any such Conditions or covenants and to prevent such violation or threat of violation and or

---

[7] Because Legacy failed to show a vested property right as to permits and access to the greenbelt strips, its underlying due process claim brought pursuant to § 1983 failed—and a § 1983 conspiracy claim is not actionable absent an actual violation of § 1983. *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008).

to recover damages for such violation or threat of violation, **including reasonable attorney's fees** and in general to pursue and seek such other remedies and or relief as may be permitted at law and or in equity, including, without limitation, specific performance.

(Decl. of Reservations, Dkt. 99-1, at 50) (emphasis added). Texas Property Code § 5.006 states that courts "shall" award reasonable attorneys' fees to "a prevailing party who asserted" an action "based on breach of a restrictive covenant." Tex. Prop. Code § 5.006(a). The court's award of attorneys' fees under § 5.006 may include appellate attorneys' fees. *Fonmeadow Prop. Owners' Ass'n, Inc. v. Franklin*, 817 S.W.2d 104, 106 (Tex. App.—Houston [1st Dist.] 1991, no writ).

HSBR Development contends that it can recover under the Declaration and § 5.006 for its breach of restrictive covenant counterclaim and for its defense against Legacy's claims, which HSBR Development asserts were so intertwined with its recoverable counterclaim that it need not segregate fees. (HSBR Dev. Mot., Dkt. 145, at 5–7). HSBR Development additionally argues, however, that if the Court finds segregation is appropriate, segregation is appropriate at most for the fees incurred prior to its filing of its counterclaims. (*Id.* at 6–7). It represents that "[s]egregation of these tasks results in a discount of approximately 10% or 40 hours of the total 370 hours incurred." (*Id.* at 7).

Legacy disagrees that HSBR Development may recover for its defense against the claims asserted by Legacy and argues that HSBR Development did not meet its burden to demonstrate that the fees sought advanced both recoverable and nonrecoverable claims. (Resp., Dkt. 151, at 4). Legacy also asks the Court to find that fees billed up until December 19, 2022, when HSBR Development filed its counterclaims, cannot be included in the attorneys' fee award. (*Id.*).

Based on a review of the summary judgment briefing in this case, the Court finds that HSBR Development's defenses were "inextricably intertwined" with its recoverable counterclaims based on the Declaration. The core of Legacy's negligence claim was that Defendants "had a duty not to interfere with Legacy's use of the greenbelt." (5th Cir. Opinion, Dkt. 144-4, at 25). As HSBR Development put it in its Reply: "Certainly, [HSBR Development owes] no duty to aid or approve

11

the construction of Legacy's roadway across the greenbelt, residential lot and easement in violation of the Declaration." (HSBR Dev. Reply, Dkt. 119, at 8). Likewise, the main thrust of HSBR Development's argument against Legacy's civil conspiracy claim was that its alleged conduct was not tortious or unlawful, as it had the power to enforce the Declaration. (*See* HSBR Dev. Mot. Summ. J., Dkt. 99, at 11–15). Legacy's Response in opposition addresses the negligence and civil conspiracy claims only once—with the unconvincing argument that its claims for negligence and civil conspiracy "sought global relief unrelated to the enforcement of declarations." (Resp., Dkt. 151, at 7). The Court therefore does find that HSBR Development's defenses against Legacy's remaining claims were so intertwined with its recoverable counterclaim that fees need not be segregated.[8] The Court will, however, deduct 10% of the requested fee award to account for the time billed prior to HSBR Development's filing of its counterclaims. (*See* HSBR Dev. Mot., Dkt. 145, at 7).

In summary, the Court finds that HSBR Development may recover for its counterclaims and for its defenses against Legacy's claims but will deduct 10% of the requested fee award ($15,925) to account for hours billed prior to the recoverable counterclaims being filed.

## 2. Review of Billing Records and Lodestar Analysis

Next, the Court must review HSBR Development's submitted billing records, (Dkt. 145-2), for time that is "excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Legacy asserts that a large portion of HSBR Development's billing records are too "vague" and seek to recover for unrecoverable "clerical work." (Resp., Dkt. 151, at 9–10). Legacy also argues that the records contain instances of impermissible block billing. (*Id.* at 8–10). HSBR Development replies that its entries are specific enough to identify the nature of the work

---

[8] HSBR Development was granted summary judgment on Legacy's request for declaratory relief because Legacy's underlying causes of action failed as a matter of law. (R. & R. on Mots. Summ. J., Dkt. 127, at 23). Accordingly, any fees billed defending against the declaratory judgment action were also inextricably intertwined with the recoverable fees and need not be segregated.

and that the alleged entries containing "block billing" "in fact contain an itemized list of specific tasks and are specific enough to determine the amount of time spent was reasonable for the work performed," such that the entries are not improper. (Reply, Dkt. 156, at 7).

After a close review of the billing records, the Court ultimately agrees with HSBR Development that its billing records are permissible. The billing entries are specific enough for the Court to determine that the time billed was reasonable for the work performed and necessary for the services rendered. Nor do the entries with multiple tasks constitute impermissible block billing.[9]

Next, the Court performs the "lodestar" analysis. Courts applying Texas law are instructed to apply the lodestar method of calculating attorneys' fees—the product of reasonable hours times a reasonable rate—to "any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Rohrmoos Venture*, 578 S.W.3d at 494–95. Courts have applied the lodestar method of calculating reasonable attorneys' fees to cases involving claims under Texas Property Code § 5.006 and 42 U.S.C. § 1983. *See, e.g.*, *Walker v. Wolfe Airpark Civic Club, Inc.*, No. 14-23-00748-CV, 2025 WL 1037265, at *4–5 (Tex. App.—Houston [14th Dist.] Apr. 8, 2025, pet. denied) (applying the lodestar method to a claim brought under § 5.006); *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 391–93 (5th Cir. 2000) (affirming the use of the lodestar analysis in a § 1983 case).

To perform a lodestar analysis:

---

[9] "Block billing is the practice of including the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (quoting *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004)). Here, on the other hand, HSBR Development's entries include specific, generally related tasks and/or are generally billing for relatively short time periods. (*See, e.g.*, Dkt. 145-2, at 6) (billing 0.1 hours for "Attention to court notice and review court order regarding Legacy motion to dismiss; attention to email from Ron Mitchell; email counsel regarding deposition"); (*id.* at 7) (billing 0.2 hours for "Attention to email from Gunnar Seaquist; attention to emails from Alysia Wightman and counsel; attention to email and deposition notice regarding Ron Mitchell deposition"). The Court finds these types of billing entries to be sufficient, as it is reasonable for these types of tasks—in total—to take the billed periods of time.

First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. *Id.* In making a lodestar adjustment the court should look to twelve factors, known as the *Johnson* factors, after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).[10]

Here, Attorneys Jeffrey Miller and Jennifer Lloyd billed HSBR Development $400 per hour for work done before this Court and $500 per hour of appellate-level work.[11] (Miller Decl., Dkt. 145-1, at 3). Mr. Miller asserts, and this Court agrees, that these rates are reasonable for lawyers in this community with their level of expertise.[12] *See Davis v. Bd. of Sch. Comm'rs of Mobily Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976) (reaffirming the principle that "the district court is itself an expert in assessing" whether an hourly rate is reasonable within that court's legal market). The Court also finds that the hours expended on this case—375.7 hours over four years of litigation, including an appeal and oral argument in front of the Fifth Circuit—is reasonable.[13] Additionally, the Court in particular credits Mr. Miller's statements regarding the *Johnson* factors that (1) his firm "typically does not handle multiple federal court lawsuits contemporaneously," such that this work precluded other employment by the lawyers; (2) he and his law partner each have over twenty-five years of civil

---

[10] The *Johnson* factors are comparable to the *Arthur Andersen* factors laid out by the Supreme Court of Texas. *See Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000).

[11] Mr. Miller notes that he "did not charge [his] time for the appeal to avoid duplication, although [he] consulted with Ms. Lloyd on its aspects." (*Id.*).

[12] Legacy does not challenge the hourly rates as unreasonable.

[13] As explained in Section III(A)(1), *supra*, however, the Court will omit 10% of the hours billed.

litigation experience and handled the matter themselves, rather than using junior lawyers; (3) he has represented Horseshoe Bay Resort and its affiliates for over twenty years and is therefore "efficient and conservative" in his billing; (4) he and his partner successfully defended against Legacy's claims for $20 million in damages and won a declaration and injunctive relief on its counterclaim for breach of restrictive covenant, which was upheld on appeal. (*Id.* at 3–4). These factors weigh against a reduction of the fee award.

On the other hand, the Court finds that a substantial amount of the legal work done by HSBR Development in defending against Legacy's claims, though successful, was relatively simple.[14] The Court therefore finds that an additional 10% reduction in the fee award is appropriate based on the *Johnson* factor accounting for "the novelty and difficulty of the questions presented."

In summary, having analyzed whether segregation of fees was necessary, the rates and hours billed, and the *Johnson* factors, the Court finds that HSBR Development has carried its burden in demonstrating the reasonable, necessary fees it incurred, except that the Court will reduce the fee award by 20% to account for time billed prior to the filing of the recoverable counterclaims and the relatively simple nature of many of HSBR Development's (successful) claims and defenses. The Court will therefore order Legacy to pay $127,400.00 in attorneys' fees to HSBR Development.

### B. The POA's Motion for Attorneys' Fees

The POA was granted summary judgment on Legacy's strip-and-gore claim, § 1983 conspiracy claim, civil-conspiracy claim, breach of fiduciary duty claim, negligence claim, and request for inspection of records. (R. & R. on Mots. Summ. J., Dkt. 127; Order Adopting R. & R. on Mots. Summ. J., Dkt. 129). It moves for an award of $255,696.41 in attorneys' fees. (POA Mot., Dkt. 148, at 10).

---

[14] For instance, given that Legacy's strip-and-gore claim and related § 1983 conspiracy claim were groundless, *see supra* Section III(A)(1), mounting a defense would not have required difficult or novel legal analysis.

### 1. Recoverable and Unrecoverable Defenses

The POA moves for recovery of all of its attorneys' fees and argues that segregation of fees was not necessary. (POA Mot., Dkt. 148, at 14–15). To the extent the Court believes segregation is necessary, counsel for the POA opines that "the claims [were] so intertwined that 85% of the attorney's fees and expenses incurred by the POA in this matter would have still been necessary, even if Legacy ha[d] asserted only a section 1983 conspiracy claim against the POA." (Rojo Aff., Dkt. 148-1, at 6). Legacy responds that the POA has failed to meet its burden to recover fees as a prevailing defendant in a § 1983 action and improperly failed to segregate fee for allegedly unrecoverable defenses. (Resp., Dkt. 152, at 3–7). Notably, Legacy does not explicitly address Ms. Rojo's opinion that 85% of the work billed for would have been done had Legacy solely brought a § 1983 conspiracy claim.

First, the Court already determined in Section III(A)(1), *supra*, that HSBR Development may recover against Legacy under 42 U.S.C. § 1988 for its frivolous § 1983 conspiracy claim that Legacy continued to litigate for months against the POA and HSBR Development despite the Court dismissing Legacy's similar § 1983 conspiracy claim against the City at the pleading stage. Moreover, the Court already found that HSBR Development's defense of the § 1983 claim was inextricably intertwined with its defense against the strip-and-gore claim. Based on the same reasoning, the POA may recover for its successful defense against Legacy's § 1983 conspiracy claim and strip-and-gore claim.

Next, the Court considers whether the POA may recover for its successful defense against Legacy's civil-conspiracy claim, breach-of-fiduciary-duty claim, negligence claim, request for inspection of records, and request for a declaratory judgment. As with the POA's defense against Legacy's § 1983 claim, the POA's defenses against Legacy's civil-conspiracy and negligence claims were based at least in part on Legacy's failure to prove ownership of the relevant portion of the

16

greenbelt. For instance, in pleading both its civil-conspiracy claim and negligence claim, Legacy had alleged that Defendants breached a duty they owed to Legacy by "depriv[ing] Legacy of protected property rights," i.e., access to the relevant portion of the greenbelt and ability to build a roadway there. (*See* 2d Am. Compl., Dkt. 43, at 20–21). The POA successfully proved as a matter of law that Legacy did not have these alleged property rights. Accordingly, the POA's defenses against the civil-conspiracy and negligence claims—and therefore against the related claim for a declaratory judgment—were inextricably intertwined with its recoverable § 1983 conspiracy claim, and it need not have segregated fees for these claims.

On the other hand, the Court finds that the POA's defense against Legacy's breach-of-fiduciary-duty claim and request to inspect records were not inextricably intertwined with the recoverable § 1983 claim. As to the former claim, the POA's defenses were that there was no fiduciary duty between the parties, the claim was barred by the economic loss rule, and there is no evidence of breach of fiduciary duty. (POA Mot. Summ. J., Dkt. 101, at 14–17). As to the latter claim, the POA's defense was that Legacy "could put forth no evidence that it followed the specific procedures set out in the statute for obtaining said records." (*Id.* at 21). Any connection between these claims and the POA's recoverable defense against Legacy's § 1983 claim is relatively weak. Accordingly, the Court will reduce the requested fee award. Based on (1) Ms. Rojo's opinion in her affidavit, (Dkt. 148-1), that 85% of the billing entries would still have been necessary had Legacy only filed a § 1983 claim; (2) the Court's finding that the POA may also recover for its defenses against Legacy's claims for civil conspiracy, negligence, and declaratory relief; and (3) the fact that the POA's defenses against Legacy's breach-of-fiduciary-duty claim and request to inspect records were relatively simple and would have required little-to-no discovery, the Court will reduce the requested fee award by 5% to account for the failure to segregate.

17

### 2. Review of Billing Records and Lodestar Analysis

Next, the Court must review the POA's submitted billing records, (Dkt. 148-1), for time that is "excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court may reduce or eliminate vague entries with descriptions like "research regarding" or "research legal issues." *Walker v. City of Mesquite*, 313 F.3d 246, 252 & n.4 (5th Cir. 2002). *See also Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees. . . . Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended."); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) (noting that "[l]itigants take their chances when submitting [vague] fee applications," because the district court has "sufficiently leeway within which to *accept or reject*" such fee applications") (emphasis in original). The Court will also analyze whether certain billing entries are not recoverable. *See, e.g.*, *Hunt Dev. Group, L.P. v. Dick Corp.*, No. EP-09-CA-313-FM, 2010 WL 11601053, at *7 (W.D. Tex. Dec. 8, 2010) (citing *Gill Sav. Ass'n v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 702 (Tex. App.—Dallas 1988, writ denied)) (holding that a party may only recover attorneys' fees for paralegal time where that work is typically done by an attorney and where there is evidence in the record establishing that the paralegal is qualified to perform substantive legal work).

First, Legacy argues that the POA has "included legal assistant work without proof that the work is 'traditionally done by an attorney,' and, 'the assistant or paralegal is qualified to perform substantive legal work." (Resp., Dkt. 152, at 8) (quoting *Hunt Dev. Grp., L.P. v. Dick Corp.*, No. EP-09-CA-313-FM, 2010 WL 11601053, at *7 (W.D. Tex. Dec. 8, 2010)). The POA replies that John Warren, the legal assistant who worked on this case, is a board-certified senior paralegal with twenty-five years of experience and was therefore qualified to perform substantive legal work in this case. (POA Reply, Dkt. 158, at 4–5 & n.3). It further asserts that the billing entries for Mr. Warren were

18

for substantive legal work and not clerical work, such that the POA may recover for these billing entries. (*Id.* at 4–5). The Court agrees that Mr. Warren is qualified to perform substantive legal work. The Court also finds, after an in-depth review of the billing entries, that the work billed by Mr. Warren was particularly substantive, complex, and would frequently be done by a lawyer. The Court finds it wholly appropriate to include work billed by Mr. Warren in the fee award.

Second, Legacy asserts that the POA's billing records are overly redacted and vague, making it difficult to determine whether the hours claimed were reasonable and necessary. (Resp., Dkt. 152, at 8–9). The POA replies that it "permissibly redacted privileged information from its invoices" and that, logically, the majority of the redacted entries are related to emails, telephone calls, or research.

Though the majority of the POA's billing entries are sufficiently detailed or are plainly redacted to maintain attorney-client privilege, the Court agrees with Legacy that certain redacted time entries are too vague. For example, a notable number of vague entries from an associate attorney relating to drafting and research are redacted to the extent the Court cannot determine whether the time billed was necessary and reasonable.[15] Entries from other billed employees, such as "Begin working [REDACTED]," (Dkt. 148-1, at 43); "Investigate [REDACTED]", (*id.* at 115); "Revise [REDACTED]," (*id.* at 135); and "Researching to see [REDACTED]," (*id.* at 297), are similarly too vague to allow recovery. Based on the number of vague entries, the Court finds it appropriate to omit an additional 5% of the requested fees.

Third, Legacy contends that the "time billed on many tasks is unquestionably excessive" and provides the following examples:

> (i) on 2/11/22, 6.8 combined hours was billed to draft a 6 page Answer;
> (ii) on 6/17/22, billed combined 12.4 hours to draft a report with no indication
> of its length or substance;

---

[15] For instance, many of the associate's time entries include descriptions like "Continue drafting [REDACTED]"; "Review and analyze [REDACTED]"; "Research regarding [REDACTED]." (*See generally* POA Billing Records, Dkt. 148-1). Two additional entries from this associate bill 6.20 hours, or $1147.00, for "Prepare [REDACTED]" and "Continue to prepare [REDACTED]." (*Id.* at 73).

19

(iii) on 6/17/22, billed combined 9.6 hours to draft 3 and a half pages of form Disclosures;
(iv) on 7/29/22, billed combined 10.4 hours to draft form discovery requests;
(v) on 8/22/22, billed combined 7.0 hours to draft 3 and a half pages or Interrogatory response;
(vi) on 6/15/23 billed combined 10.8 hours to review a deposition transcript;
(vii) 46.9 combined hours to draft a 10 page reply to POA's MSJ;
(viii) 16.6 combined hours billed to draft 6 page response to Legacy's MSJ; and
(ix) 57.8 hours to draft POA's 25 page MSJ.

(Resp., Dkt. 152, at 10). The POA replies that Legacy failed to address the *Johnson* factors in its opposition "or other relevant factors such as the number of parties in the litigation, the amount of written discovery and depositions conducted throughout the course of the litigation, the number of claims asserted against the POA as compared to the other defendants, and the significant portion of the POA's legal work that was performed by an associate attorney." (POA Reply, Dkt. 158, at 6). The POA additionally argues that "Legacy's own conduct certainly contributed to the POA's increased attorney's fees," such as "the fact that Legacy's legal theories changed throughout the litigation." (*Id.* at 6–7).

The Court ultimately agrees with Legacy that some of the time billed by the POA's attorneys appears excessive. In particular, the Court takes issue with billing 46.9 hours to draft a ten-page reply and 57.8 hours to draft a twenty-five-page motion for summary judgment, particularly given the relatively low level of novelty this case presented. The Court will reduce the fee award for the reply to 25 hours by omitting 21.9 hours at a rate of $185.00 per hour, given that the majority of the work on the reply was done by associates billing at that rate. Likewise, the Court will also reduce the fee award for the motion for summary judgment to forty hours by omitting 17.8 hours at a rate of $185.00 per hour. Accordingly, the Court will reduce the fee award by $7344.50.

The Court now undertakes the lodestar analysis. *See supra* Section III(A)(2). Based on an initial requested award of $255,696.41, an across-the-board reduction of 10% for unrecoverable fees

and vague time entries, and a reduction of $7344.50 for excessive billing, the Court undertakes the lodestar analysis based on a fee award of $222,782.27.

Ms. Rojo asserts in her Affidavit that "(1) that the hours expended were expended on the topics stated in the attached bill records, and (2) that the hours expended, the work performed, and the rates charged were reasonable and necessary." (Rojo Aff., Dkt. 148-1, at 3). The rates charged were $240.00 for a board-certified civil appellate lawyer with thirty years of practice; $230.00 per hour for a board-certified labor and employment lawyer with twenty years of practice; $185.00 per hour for associates working under Ms. Rojo's supervision; and $105.00 for a board-certified senior paralegal working under Ms. Rojo's supervision.[16] Legacy concedes that these were reasonable hourly rates,[17] and the Court independently finds that these are very reasonable fees in this legal market.

Regarding the hours spent on this litigation, the POA states that "approximately 1,372 total hours were required to represent the POA over the course of nearly four years of litigation." (POA Mot., Dkt. 148, at 13). Though the POA's attorneys undoubtedly achieved a successful result for their client, the Court is skeptical that this number of hours was reasonable and necessary. The POA's co-defendant HSBR Development, which was largely sued by Legacy for the same claims, was also awarded summary judgment on all claims, and also won on appeal at the Fifth Circuit, billed for a remarkably lower number: 375.7 hours over four years of litigation. (Miller Decl., Dkt. 145-1, at 3). The POA's other co-defendant, the City of Horseshoe Bay, also billed for significantly

---

[16] The POA's motion claims that the rates charged were "$240.00 for a Board Certified Civil Appellate lawyer who has been practicing for over 30 years, $240.00 per hour for a Board Certified Labor and Employment lawyer who has been practicing law for over 20 years, $200.00 per hour for associates working under Ms. Rojo's supervision, and $115.00 per hour for a Board Certified senior paralegal working under Ms. Rojo's supervision." (POA Mot., Dkt. 148, at 11). Based on the Court's review of the attached billing records, however, the motion's asserted rates appear to be inaccurate. The Court assumes that the client was billed in accordance with the billing records and will apply the records' rates rather than the rates stated in the motion. To the extent this is incorrect, however, the POA should file a correction with the Court.

[17] *See* Resp., Dkt. 152, at 10) ("Furthermore, while the hourly rate charged by POA may be reasonable . . . .").

fewer hours: 614.4 hours over four years of litigation. (*See* Order Granting City's Mot. for Attys' Fees, Dkt. 159). Though the Court would not expect co-defendants to necessarily bill for a similar number of hours, given varying claims, defenses, and litigation strategies, the POA billing for approximately triple the number of hours as HSBR Development and double the number of hours as City is strong evidence that the POA's attorneys have not met their burden to demonstrate that they exercised proper billing judgment. *See Walker*, 313 F.3d at 251 (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)) (noting that the party moving for attorneys' fees is "charged with the burden of showing the reasonableness of the hours they bill, and, accordingly, are charged with proving that they exercised billing judgment"). Thus, based on a review of the record, the POA's billing entries, and the POA's co-defendants' billing records, the Court finds it appropriate to reduce the initial lodestar amount—$222,782.27—by an additional 30%, such that the POA would be awarded $155,947.59. *See id.* (quoting *HUD*, 99 F.3d at 770) ("If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.'").

The Court now considers whether this amount should be further adjusted upward or downward based on the *Johnson* factors. *See supra* Section III(A)(2). The POA contends that the *Johnson* factors support its requested fee award and does not recommend an upward or downward adjustment. (POA Mot., Dkt. 148, at 13–15). Legacy does not address the *Johnson* factors in its Response. Cognizant that it may not "impermissibl[y] double count[]," the Court finds that the previously applied adjustments sufficiently account for the *Johnson* factors and that these factors therefore should not serve as the basis for any additional adjustment. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted) ("The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting."). For instance, the 30% reduction

applied by the Court to account for excessive billing should account for the relatively simple nature of many of the POA's legal arguments and the case's relatively low level of novelty. None of the other factors counsel towards further adjustment, either. Accordingly, the Court will order Legacy to pay $155,947.59 in attorneys' fees to the POA.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that HSBR Development's Amended Motion for Attorney Fees, (Dkt. 145), is **GRANTED IN PART**, such that HSBR Development is awarded **$9,784.36** in costs and out-of-pocket expenses and **$127,400.00** in attorneys' fees.

**IT IS FURTHER ORDERED** that the POA's Amended Motion for Attorney's Fees, (Dkt. 148), is **GRANTED IN PART**, such that the POA is awarded **$25,099.60** in costs and out-of-pocket expenses and **$155,947.59** in attorneys' fees.

**IT IS FINALLY ORDERED** that the sums awarded above shall bear post-judgment interest from May 13, 2024, to be calculated and compounded pursuant to 28 U.S.C. § 1961, until paid in full.

**SIGNED** on June 17, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

23